Argued April 1, reversed May 15, petition for rehearing denied June 25, 1968

ROMERO, *Respondent, v.* STATE COMPEN-
SATION DEPARTMENT, *Appellant.*

440 P. 2d 866

*Quintin B. Estell,* Assistant Attorney General, Salem, argued the cause for appellant. On the brief

were Robert Y. Thornton, Attorney General; Wallace Carpenter, Assistant Attorney General and Chief Counsel for State Compensation Department, and Clayton Hess, Assistant Attorney General, Salem.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Levin & Wilson, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an appeal by the State Compensation Department from a judgment of the circuit court increasing the compensation award to an injured workman above that allowed by the Workmen's Compensation Board.

Plaintiff was injured when a tractor which he was operating passed over a pile of rocks throwing him to the ground and causing an injury to his back. He filed a claim for an industrial accident and was awarded permanent partial disability for an unscheduled injury equivalent to 20% loss of function of an arm. Plaintiff made a request to the Workmen's Compensation Board for a hearing under ORS 656.283. A hearing was held and the Hearing Officer increased the award to the equivalent of a 35% loss of function of an arm. Plaintiff requested a Board review of the award under ORS 656.295. The Board affirmed the Hearing Officer and plaintiff then appealed to the circuit court under ORS 656.298. The circuit court raised the award to 60% loss of function of an arm. The State Compensation Department appeals from the judgment of the circuit court.

■ We review the record de novo.[1] The evidence in the record is scant. It is clear that the injury arose out of plaintiff's employment. The only question is the extent of disability resulting from the injury.

Plaintiff was employed by the Cascade Construction Company as a relatively unskilled laborer. His job consisted of cleaning up materials at the construction site, shoveling and raking these materials, leveling off with shovel and rake areas which could not be reached with machinery, helping in loading materials to be hauled away, setting and checking stakes, and similar duties. Plaintiff was injured while operating a small "cat" or tractor. He did not regularly operate the tractor; he was simply moving it to get it out of the way of some work that was in progress.

Plaintiff reported his accident immediately to his supervisor, complaining that he was in pain. A few days later he consulted Dr. Trostel who treated him and eventually referred him to Dr. Borman, who performed a myelogram. His condition was described as "compression of left lumbo-sacral nerve roots due to a herniated lumbar (L-4) nucleus pulposus." In January, 1966 plaintiff underwent surgery described as a "lumbar laminectomy with excision of L-4 disc herniation." Plaintiff returned to work on April 11, 1966. In describing his condition after surgery, plaintiff testified that his back "was not as strong as it used to be"; that he could not perform the amount of work he performed before the accident; that his legs "go to sleep on me * * * if I work long hours"; that he suffered pain in his back "on and off" and pain

[1] Coday v. Willamette Tug & Barge Co., 250 Or 39, 440 P2d 224 (May 1, 1968).

in his legs; that the pain in his legs was brought on by "bending down too long or walking too much"; that his ability to lift things decreased after the accident but there was no decrease in his ability to rake and shovel.

Plaintiff's foreman testified that when plaintiff returned to work he did not work as hard as he did before; that he did not "bear down on the rake like he did before"; that "his work isn't near as good as it was before the accident," but that his work was superior to that of the average hand laborer.

From the foregoing evidence we are expected to fix the degree of plaintiff's disability. This is a difficult, if not an impossible task. The three tribunals which have preceded us in making an appraisal have fixed plaintiff's disability respectively at 20%, 35% and 60%. Without any criteria for judgment it is impossible to say that any of these percentages is wrong. We do not have the benefit of any testimony directed at the problem of fixing the degree of disability. In a letter addressed to the claims division of the State Compensation Department, Dr. Borman stated his "estimate of permanent partial disability would be twenty percent as related to the loss of use of an arm."

In the closing argument before the Hearing Officer reference was made by counsel for plaintiff to a book by Dr. Cauthorn Smith on medical disability ratings which put the disability rating for a laminectomy at between 30% and 40%, but counsel explained that the author "was talking in the viewpoint of a medical examiner * * *, which is an entirely different thing than evaluating disability." Counsel for the compensation department called the Hearing Officer's attention to the American Medical Association's guide for

disability evaluation and stated that the guide "indicates that 100 percent loss of an arm  *   *   *  by amputation, equals 60 percent of the whole man," and from this counsel concluded that "20 percent of an arm equals 12 percent of the whole man." He further noted that according to the guide "the basic value for disc lesion, operated or non-operated, with residuals, is 5 percent of the whole man." He explained that "residuals are evaluated on the basis of ankylosis, restriction of motion, or any fracture of vertebrae, or any combination thereof." Counsel for the department suggested, however, that "30 to 35 percent would be more realistic and more in accord with what the previous medical opinion has been  *   *   *."

There is nothing in the record indicating how the trial court reached the conclusion that 60% was the measure of plaintiff's disability.

■■ Although we are expected to review the record de novo, we feel that under the circumstances of this case we have no criteria for fixing the degree of disability or for deciding which of the three different percentages fixed in the preceding adjudications below comes closest as a measurement of plaintiff's loss. Under these circumstances we feel that the appraisal made by the Hearing Officer and which was affirmed by the Board should be adopted. As counsel for plaintiff at the hearing admitted, "Much of a disability rating is based, and very properly so, on the subjective complaints of pain." In this subjective area the opportunity to observe the claimant and the other witnesses is of prime importance. The Hearing Officer is in a position to make this observation and we are not. Moreover, although we must review the record de novo, we are entitled to take into account the administra-

tive agency's expertise which develops out of dealing with hundreds of similar cases. As has been pointed out, "industrial commissions generally become expert in analyzing certain uncomplicated kinds of medical facts [and we would add non-medical facts also], particularly those bearing on industrial causation, disability, malingering and the like." 2 Larson's Workmen's Compensation, § 79.53, p. 303 (1961). Further, it would seem that in the type of case we have before us, where the criteria for appraising disability is at best vague and highly subjective, the administrative agency should have some leeway in developing, if possible, a pattern of decision-making by a comparison of the many cases which are presented to it.

For the foregoing reasons, we feel compelled to hold that the judgment of the trial court must be reversed and the order of the Workmen's Compensation Board be reinstated. It is so ordered.