Argued February 13, reversed March 12, petition
for rehearing denied April 7, 1970

## MELIUS, *Respondent, v.* BOISE CASCADE
## CORPORATION, *Appellant.*

466 P2d 624

*Ridgway K. Foley, Jr.,* Portland, argued the cause
for appellant. With him on the briefs were Robert E.
Joseph, Jr., and Mautz, Souther, Spaulding, Kinsey &
Williamson, Portland.

*Richard T. Kropp,* Albany, argued the cause for

respondent. With him on the brief were Mark A. Bliven, Dallas and Emmons, Kyle & Kropp, Albany.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

The defendant appeals from judgment of the circuit court allowing a workmen's compensation claim for low back injury which allegedly occurred at defendant's Valsetz plywood mill in early January 1966. Defendant accepted a claim for shoulder and upper back injury but rejected the low back claim. The hearing officer rejected the low back claim and on review the Workmen's Compensation Board sustained his finding. Claimant then appealed to the circuit court and the claim was allowed.

Claimant's job was to pull veneer from the green chain, which is heavy work. He fell upon the chain decking causing impact with a shoulder and his back. He testified that he reported the fall to his supervisor when it happened, but felt no ill effects then. Several weeks later he went to Dr. Flaming, an osteopath, for treatment, but the claim was not made until about nine months had elapsed. Dr. Flaming testified that the complaint was of pain in the shoulder and upper back. The doctor treated claimant conservatively on two visits. Claimant made no similar complaints until the ensuing summer. On his first examination the doctor noted some low back tenderness, but that claimant did not complain of anything but the shoulder and thoracic pain. Claimant continued working for defendant until May 1966, but his work was interrupted in April by a motorcycle accident which hospitalized him for a

week after phlebitis developed in his right leg. When Dr. Flaming was questioned about whether this accident aggravated the low back, he said the phlebitis would hurt so much that "he wouldn't recall any other pain." Dr. Flaming saw him for several other problems in spring and early summer of 1966, but at no time recorded any complaint about the low back.

Claimant terminated his employment with the defendant in May and went to work on the green chain for another plywood company. In applying for the new employment, although questioned about previous injuries, he said nothing about back injuries suffered while he was employed by defendant, and Dr. Bossatti, who did a pre-employment examination, testified that in observing the claimant do a bending exercise he noted no impairment of the back. Claimant continued the new employment until late September 1966, at which time he quit, suffering painful symptoms in his lower back.

In October Dr. Flaming referred him to a Salem orthopedist, Dr. Anderson. Dr. Anderson found, as had Dr. Flaming in September, an aggravated congenital deformity in his low back. The end result of Dr. Anderson's examination and treatment was a gill laminectomy in this area of the spine.

Dr. Flaming's opinion was that the fall in defendant's mill was the cause of the aggravation of the congenital condition. Dr. Anderson's testimony at first was to the contrary, and after repeated direct, cross, re-direct, and recross-examination, he stated:

> "* * * We found the defect. Dr. Flaming found some trouble in the lower back which he records. I have to say yes, with that kind of find-

ings, I think probably his first injury in January could have caused this trouble, but here a man continues to work on the green chain, he goes through a motorcycle accident and continues to work after that and actually from the story, the symptoms did not become, at least, apparent in July before they really bothered him sufficiently. Now, all of these pre-existing things, the January, the green chain, the April injury, the subsequent green chain and so forth, all could be a factor and I can't tell which. I just cannot tell. Many of these patients get this trouble without any injury at all. Many of them go through life with this and have multiple injuries and have no appreciable trouble, so my answer—I don't know exactly which of these series of events caused it. When he got to me in October, I found this condition. He had not responded to treatments, and I felt the surgery was necessary. Now, I just don't know where to tie this thing to * * *."

After the hearing officer had rejected the claim for the low back injury, the record was reviewed by the Workmen's Compensation Board which, *inter alia*, found:

"Subsequent to the industrial injury and prior to major complaints of low back difficulty, the claimant was injured while riding a motorcycle which collided with a car. Coupling this severe non-industrial trauma with a pre-existing congenitally weak spine, noting the history of the development of the low back symptoms, further noting that claimant before instituting this claim denied having low back complaints and further noting that treating and examining doctors generally could no more than conjecture an industrial relationship, the Board concludes that the claimant's low back injury did not arise nor was it exacerbated by the industrial injury."

A detached appraisal of the facts of this case leads inevitably to the conclusion that *Moore v. U. S. Plywood Corp.*, 1 Or App 343, 462 P2d 453 (1969) applies:

> "In an appeal under the Workmen's Compensation Law the trial judge, reviewing only the record, cannot give us the benefit of his opinion of the credibility of 'live' witnesses. The hearing officer sees and hears the witnesses. Thus, for the same reasons we give weight to the findings of the trial judge on the issue of credibility in cases where he sees and hears the witnesses, we give weight to the findings of the hearing officer on the matter of credibility of witnesses in appeals under the Workmen's Compensation Law."

Furthermore, we believe the facts require application of the rule of *Romero v. Compensation Department*, 250 Or 368, 440 P2d 866 (1968), as interpreted in *Ryf v. Hoffman Construction Co.*, 254 Or 624, 459 P2d 991 (1969). Those cases hold that we consider the expertise of an administrative agency as a whole in matters of this nature. The court said in *Romero*, supra:

> "* * * In this subjective area the opportunity to observe the claimant and the other witnesses is of prime importance. The Hearing Officer is in a position to make this observation and we are not. Moreover, although we must review the record de novo, we are entitled to take into account the administrative agency's expertise which develops out of dealing with hundreds of similar cases * * *." 250 Or at 372-73.

The 1965 Act provides for *de novo* hearings on the record at each appellate level. Applying the case law that has thus far developed under the Act, we conclude that the findings of the circuit court must be

reversed and the order of the Workmen's Compensation Board reinstated.

Reversed.