Argued February 20, affirmed April 1, petition for reconsideration
denied May 1, petition for review denied May 21, 1974

SCHWEHN, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND (No. 392081), *Respondent.*

520 P2d 467

*Raymond Conboy,* Portland, argued the cause for

appellant. On the brief were Pozzi, Wilson & Atchison, and Dan O'Leary, Portland.

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and DENECKE, Judges.

LANGTRY, J.

Claimant appeals from an adverse decision on his claim for workmen's compensation for a myocardial infarction which occurred on December 17, 1971, at which time he was 45 years old. The hearing officer held for the claimant, the Workmen's Compensation Board reversed in a split decision, and the circuit court upheld the majority of the Workmen's Compensation Board.

Claimant was employed by the State of Oregon, Vocational Rehabilitation Division, working up from counselor to supervisor of intake activities, to program specialist in the Portland area. After about a year as specialist his duties were transferred to Salem where he was in charge of "particular programs" on a state-wide basis. He commuted from Portland to his job in Salem. This obviously increased the number of hours in which he was away from home. At the time of the infarction, claimant was at a two-day work-connected meeting at Bowman's Resort in the Mt. Hood area. After a relaxed day and evening, claimant retired at his lodgings at the resort at about 10 p.m. and awakened at 11:30 p.m. with the heart attack. Since hospitaliza-

tion, he has returned to counselor duties which are less stressful to him than his other recent duties.

He contends that chronic stress of his employment was a material contributing cause of the attack. In support of his claim he produced the family physician who first attended him, Dr. David Grimwood, and Drs. Ceilous Williams and Frank McBarron, internal medicine specialists who are experienced in cardiology. Additionally, he submitted a letter from Dr. John Butler, a psychiatrist who had known him for sometime, in which claimant was described as a

"* * * person who likes to have his activities clearly defined. He has poorly tolerated circumstances that are unclear or ambiguous. * * * [E]ach time his job has changed, it has been quite distressing to him * * *.

"* * * [L]ess demanding work which would remain well organized, he would have satisfactorily handled * * * without an adverse bodily response * * *."

Drs. McBarron, Grimwood and Williams testified in response to a hypothetical question prepared by claimant's attorneys that the continuing emotional stress of the claimant's job was a material contributing factor in production of the infarction.

Drs. Wayne Rogers and Herbert Griswold, cardiologists, and Dr. Russell Parcher, Medical Director of the State Accident Insurance Fund, testified for the defendant. They studied the hypothetical question and testified that it was their opinion that the infarction was the result of the natural progression of coronary atherosclerosis and that claimant's employment was not a material factor in producing the infarction.

In *Clayton v. Compensation Department*, 253 Or 397, 454 P2d 628 (1969), the Oregon Supreme Court

decided that as a general proposition under Oregon's Workmen's Compensation Law it rejected "the view that exertion or stress can never be a causative factor in these cases." (253 Or at 402.) From this principle, when claims in such cases are presented "the question remaining is whether the work-related stresses in the particular case at issue were a causal factor in the heart attack which ensued * * *." (253 Or at 402.)

Dr. Herbert Griswold testified in *Clayton* as well as in the instant case. The Supreme Court summarized the essence of his opinion evidence in *Clayton* as "that stress can be a cause of heart attack and that since Clayton was subject to stress it could have been a factor in causing the heart attack * * *." (253 Or at 406.) The court then said that such opinion testimony was sufficient to present a fact question. Dr. Griswold's and the other opinion evidence in the case at bar was not materially different than that received in *Clayton,* but the opinions applied to the facts here and reasons given therefor present us with evenly split medical opinions.

This case is substantially different on its facts from the *Clayton* case. In *Clayton,* the claimant had been assigned a new job with the company for which he worked, requiring extensive traveling and causing him additional work pressure. During the week preceding the attack he had been traveling and returned home " 'extremely tired.' " In the case at bar the claimant had been in a relaxed situation in the day preceding his attack. Clayton suffered his fatal heart attack while he was actively at work on the job. Claimant at bar suffered his attack while he was asleep after a relaxing day.

There was no proof of *acute* emotional or physical stress that was job-related precipitating the in-

farction in this case. It is seldom, if ever, that we previously have been presented with a heart attack claim where the attack has come at other than a time when the claimant has been actively working on the job. *See Clayton v. Compensation Department,* supra; *Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968); *Giese v. Safeway Stores,* 10 Or App 452, 499 P2d 1364, 501 P2d 982, Sup Ct *review denied* (1973); *Cardwell v. SAIF,* 6 Or App 175, 486 P2d 587, Sup Ct *review denied* (1971); *Fagaly v. State Acc. Ins. Fund,* 3 Or App 270, 471 P2d 441, Sup Ct *review denied* (1970), *overruled on other grounds Anderson v. SAIF,* 5 Or App 580, 485 P2d 1236 (1971); *Mayes v. Compensation Dept.,* 1 Or App 234, 461 P2d 841 (1969). Claimant here contends that the general emotional stress of his job was a significant material contributing factor to the heart disease which in turn precipitated the infarction, not, apparently, that some particular thing which occurred on the job triggered the attack.

The medical witnesses were in substantial agreement that claimant had exhibited symptoms of atherosclerotic heart disease prior to the infarction. They considered this the underlying factor that produced the infarction. The evidence from the doctors testifying for the claimant may be summarized as follows. Stress in some cases may cause higher blood pressure which in turn increases the risk of heart disease. Stress is an added burden on the heart similar to physical exercise. Stress may result in increased smoking, also a risk factor. Stress, by altering diet, may lead to increased sugar and cholesterol levels, and thus generate these risk factors.

The evidence submitted by claimant relating to stress has several weak links. Specifically, Drs. Wil-

liams and McBarron testified that in some instances individuals react to stress by increased blood pressure and bad dietary habits. Claimant presented no evidence that showed he reacted to stress in this fashion. The only stress-related risk factor that was shown to be elevated in claimant's case was smoking.

■ Thus, the possible risk factors testified to by claimant's doctors were not shown to be present except for the possibility "stress" increased his smoking habit. This is not enough, given the other facts of the case, to amount to proof by a preponderance of the evidence that job-related stress was a material contributing cause of the myocardial infarction.

Further, the effect of claimant's proof was significantly weakened by the testimony of defendant's witnesses.

Dr. Williams equated claimant's emotional stress with physical exertion. Dr. Rogers, testifying for defendant, stated that moderate physical stress is indicated for the prevention of heart problems.

Drs. Rogers and Griswold were both of the opinion that statistical studies showing a correlation between stress and heart disease are not sufficient to support the inference of a causal connection in this case.

Weighing the evidence presented, claimant has not established by a preponderance of the evidence that chronic emotional stress was a material contributing factor in the causation of his myocardial infarction.

■ Claimant, as an additional argument supporting the claim, contends that the medical testimony was that symptoms claimant began to have about December 1, 1971 were such that he should have been hos-

pitalized immediately to prevent the eventual myocardial infarction. He testified that he was having increasing chest distress at that time, and that he could not walk a block without feeling a burning in his chest. The doctors called by both parties agreed that claimant should have been hospitalized then. Claimant, therefore, contends that his remaining at work after December 1 instead of going to the hospital must have contributed to the onset of his myocardial infarction. This is not causation. The medical evidence fairly leads to the conclusion that any activity short of total bed rest would have produced the myocardial infarction in a short time. The fact that claimant ignored the symptoms of the impending myocardial infarction and continued working does not establish causation. *Cardwell v. SAIF,* supra.

Affirmed.