Argued September 22, affirmed October 13, 1975

MORLEY, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 88140), *Appellant.*

541 P2d 160

*Janet A. Metcalf,* Assistant Attorney General, Sa-
lem, argued the cause for appellant. With her on the
brief were Lee Johnson, Attorney General, and W.
Michael Gillette, Solicitor General, Salem.

*Eric B. Lindauer,* Salem, argued the cause for respondent. With him on the brief were Clark, Marsh & Lindauer, Salem.

Before FOLEY, Presiding Judge, and THORNTON and LEE, Judges.

FOLEY, P. J.

In this workman's compensation case the issue is the compensability of claimant's episodes of paroxysmal auricular tachycardia (rapid heart action which begins and ends abruptly). The State Accident Insurance Fund denied the claim. After hearing, the referee held the claim compensable. The Workmen's Compensation Board reversed the referee. On appeal the circuit court held the claim compensable and the Fund appeals.

We adopt the referee's statement of the facts:

"Claimant is employed as construction manager for the employer; during the summer and fall of 1973 claimant was working in that capacity at Battlecreek Commons, a condominium just south of Salem. During the years 1973-1974 the employer was completing approximately 40 units a year. One of the main responsibilities of claimant required dealing with the purchasers of the units; it was necessary for him to go through each unit prior to turning it over for completed delivery to the owner to determine if everything was satisfactory and according to the specifications. Additionally, claimant assumed purchasing responsibility sometime in 1970; he also did some office work for the employer. Claimant is responsible for the hiring and firing of personnel working on the building projects, he also deals with the subcontractors involved in the construction. In September, 1973 the work load was exceptionally heavy as many units were nearing completion and the owners were anxious for deliv-

ery. Some units were behind schedule and the owners were anxious to move in. This tended to increase the stress under which claimant worked because he had to endeavor to pacify them and explain to them the reasons for being behind schedule. Claimant's hours at work are long and irregular, he often receives telephone calls at his residence after he has left the premises; also, he has a mobile telephone installed in his truck.

·"On September 10, 1973, while claimant was so employed, he suddenly became faint and was seen by his family physician, Dr. V. D. Casterline, who felt claimant was suffering paroxysmal auricular tachycardia which is a flutter of the auricle of the heart. Claimant had a history of paroxysmal auricular tachycardia for several years and has been treated· therefor by Dr. Casterline. At this time claimant's condition responded to carotid sinus massage which resulted in the return to normal heart rhythm; however, it reverted again the following day, and, at that time, it was more difficult to convert to normal rhythm. Claimant was maintained on medical medication and, as of November 28, 1973, had normal heart rhythm. Dr. Casterline believed that this condition is considered to be related to emotional stress and, while claimant has had stress both at home and at work, it was his opinion that because the two spells of tachycardia came on during the performance of his job each was caused, primarily, by the stresses of his work (Claimant's Exhibit 1).

"In June, 1974, under circumstances very similar to those of September, 1973, claimant suffered another attack. Dr. Casterline was on vacation and claimant was seen by Dr. Duane F. Taylor. Claimant had been having some episodes which lasted from a few hours to a few days most of which he had been able to stop through the application of bilaterial carotid massage and epigastric massage. He was also given medication by Dr. Taylor

(Claimant's Exhibit 2). Claimant discussed with Dr. Taylor both his problems at home and those resulting from his work; it was Dr. Taylor's opinion that the long hours that claimant worked and the type of problems which he dealt with constantly was the major factor involved. When seen by Dr. Taylor on June 12, 1974 claimant's heart appeared stable although he was advised to continue his medication (Claimant's Exhibit 3).

"On September 14, 1973, after he had been seen by Dr. Casterline, claimant filed a Report of Occupational Injury or Disease, although the employer had knowledge of the injury on the day of the incident, September 10, 1973. On October 17, 1973, the Fund denied the claim on the grounds that there was insufficient evidence that claimant sustained accidental personal injury within the provisions of the Workmen's Compensation Law and the condition requiring treatment was not the result of the activity described nor did the injury arise out of and in the scope and course of his employment (Joint Exhibit 3).

"At the hearing Dr. Casterline expressed the opinion that the long hours and arduous and strenuous, stressful work which claimant had been doing were major factors in claimant's heart problem; that the work-related stress which claimant was under was a contributing factor. Dr. Charles S. Campbell, a board certified internist, who testified at the hearing explained that paroxysmal auricular tachycardia is not caused by any certain thing but can just come on for any reason or for no reason. He expressed his opinion that, in claimant's case, it was not work related in any way. Dr. Campbell testified that at no time would stress cause any paroxysmal auricular tachycardia.

"* * * * * *."

■■ In our de novo review the issue is that of medical causation. The Fund concedes that claimant's

job involved stress and that legal causation has been established. Claimant bears the burden of showing medical causation, that is, that his work-related stress was a material, contributing factor in triggering his episodes of tachycardia. *Kiene v. Weyerhaeuser Company*, 10 Or App 519, 500 P2d 475, Sup Ct *review denied* (1972). The emotional stress cases are difficult, requiring, as they do, an individual evaluation and assessment of the factors involved in each case. *See, for example, Schwehn v. SAIF*, 17 Or App 50, 520 P2d 467, Sup Ct *review denied* (1974). Both treating physicians, Dr. Casterline and Dr. Taylor, concluded that claimant's work-related stress materially contributed to his tachycardia. Dr. Campbell did not examine the claimant nor had he ever treated him. He testified at the hearing. While acknowledging that a widely respected body of medical opinion concludes that there is a connection between stress and tachycardia, Dr. Campbell stated that claimant's tachycardia in his opinion was "not related to his work stress in any way, shape or form." He gave as the basis for this opinion that under no circumstances, emotional or otherwise, is stress a material contributing factor to paroxysmal atrial tachycardia. Since our Supreme Court, in *Clayton v. Compensation Department*, 253 Or 397, 454 P2d 628 (1969), has held that exertion or stress on the job may be a factor in heart attack cases depending upon the facts of each case, Dr. Campbell's inflexibility on this point influences our assessment of his testimony and the weight we conclude should be given his opinion.

It is our determination, therefore, that the medical evidence in this case preponderates in favor of a finding that the work-related stresses were material contributing causes of the September 1973 attack and the recurring attack in June 1974.

Affirmed.