Argued May 25, reversed June 14, reconsideration denied July 14, petition for review denied September 1, 1976

LATTIN, *Respondent,*

*v.*

# STATE ACCIDENT INSURANCE FUND,
*Appellant.*

(No. 423-403)

550 P2d 749

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Keith E. Tichenor,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LANGTRY, J.

## LANGTRY, J.

State Accident Insurance Fund appeals from a decree of the circuit court which awarded claimant permanent and total disability plus attorney fees on account of heart disease. Claimant, before his disability-forced cessation of work, was a state police officer. He is 56 years of age. His father, mother and brother all have had heart trouble. In 1968 he had a myocardial infarction which, evidence indicated, resulted in the complete occlusion of one heart artery. After several months of recovery he returned to work, but he has had continuing angina symptoms, one time severe enough to require hospitalization, for which he was under constant medical care and medication.

He was a ranking officer in the arson division of the state police. On January 17, 1974, with another officer doing the driving, he traveled from Milwaukie or Oregon City to Roseburg (about 185 miles) to investigate an incendiary fire. While there that day he became involved in investigation of unusual matters: first, the incendiary fire; then a bomb threat to a sawmill at Riddle, 24 miles further on, entailing much stair climbing; then in Canyon Creek, another 10 miles on, an earth slide which had killed eight or nine men, entailing a steep climb through soft earth; then a return to Roseburg and an arrest and arraignment on the first matter, with an accusation by the defendant's attorney of improper police questioning of the defendant's wife; then a report of another fire in which a possible homicide occurred. He was talking over coffee with other officers about the last matter when he experienced chest and left-arm pain, sweating and nausea. He went outside, collapsed without losing consciousness and was transported to a Roseburg hospital. The diagnosis there was arteriosclerotic heart disease, old inferior myocardial infarction and possible hyperventilation syndrome. Subsequent diagnoses confirmed these generally, and added ischemic heart disease and hypertensive cardiovascular disease. After

two days he returned to Oregon City for further contact with his regular physician, Dr. Jack L. Chitty. His claim for the hospitalization and treatment for the attack was accepted by SAIF. Shortly thereafter, he ceased his position with the state police on doctor's advice, and this claim for permanent and total disability ensued.

It is an undisputed fact that claimant is disabled by frequency of angina attacks from continuing his employment. As distinguished from cases presenting the problem of what was the causation that produced a given heart attack, we are here confronted with the question of whether a hyperventilation syndrome and a probable angina attack, produced by physical and other work-related stress in combination with preexisting hypertension and arteriosclerotic heart disease, in turn probably brought about an increase in preexisting angina which rendered claimant disabled.

There is no doubt that a fact question is presented by the evidence. *Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969). What was said about heart "attack" cases there is applicable here, although we are looking at the probable *results* of a complicated angina and hyperventilation episode, not a myocardial infarction itself, as is common in similar compensation cases:

> "When all heart attack cases are taken together it is easy enough to think of any single case in the group as being governed by the same probability that governs the whole group. However, if a particular heart attack is looked at alone and not as a part of a statistical sample it is difficult, indeed impossible, to say that the attack was caused by any one factor such as exertion or stress. The most that could be said in such a case is that the exertion, stress or any other single factor was a *possible* cause. The fact that the cause can be described only as a possibility when the heart attack is viewed as an isolated case does not render invalid the inference of probability based upon the generality of cases." 253 Or at 404-05.

Claimant's long-time physician is an internist, Dr.

Chitty, whose practice includes 40 to 50 percent cardiology cases. It was he who advised claimant to completely cease his stressful work as a police officer as an aftermath of this episode. He testified that the incident of January 17, 1974 probably was an aggravating cause of claimant's present disabled condition "in terms of decreasing tolerance to exercise, decreasing tolerance to emotional stress; producing angina, chest pain," and that it is not reversible. He agreed on cross-examination that he could not say with "certainty" that the incident caused the present disability, that "some degree [of] scientific guesswork" is involved in arriving at his conclusion. Asked, "* * * Is it your opinion that the disease process was accelerated by his attack * * *," he answered, "I would have to say I think it was probable that it was because of the time relationship," and shortly later he testified that "* * * I don't know how significant a contribution it is." By "it" he was referring to whatever it was that occurred to claimant's physiology on January 17, 1974.

Dr. Donald N. Wysham, a cardiologist who had not examined claimant, but who had studied the relevant data and reports, testified, as did Dr. Chitty, that the angina of concern here is chest pain, a symptom of underlying heart disease. He thought it wise that claimant was advised to cease employment. He agreed that increased blood pressure, emotional or physical stress, "anything that makes the heart's work increase" can cause it (angina), but that his studies of this case indicated no worsening of the underlying heart disease at or after the January 17 episode. He said, "* * * We feel when angina is a brief duration, not associated with cardiac damage, it doesn't have a permanent effect. That particular attack does not predispose the other attacks." He thought claimant's work-related stress was causing angina because his heart disease had progressed to a point where that occurs. He also testified, "We do not know if stress causes the progression of cardiac disease. That is a debatable point. * * * [S]tress will cause an acute

[ 683 ]

attack of angina. But it's speculation as to whether chronic stress makes the actual arteriosclerosis become worse."

We have compared this with other recent compensation claims for disability resulting from heart trouble and while they point up the difficult problem of tracing causation of the disability to job-caused exertion or stress, this case like the others can only be decided on its own evidence. *See Riutta v. Mayflower Farms, Inc.,* 19 Or App 278, 527 P2d 424 (1974), Sup Ct *review denied* (1975); *Davis v. SAIF,* 19 Or App 806, 528 P2d 1366 (1974), Sup Ct *review denied* (1975); *Schwehn v. SAIF,* 17 Or App 50, 520 P2d 467, Sup Ct *review denied* (1974); *Helmer v. SAIF,* 17 Or App 448, 522 P2d 231, Sup Ct *review denied* (1974); *Giese v. Safeway Stores,* 10 Or App 452, 499 P2d 1364, 501 P2d 982, Sup Ct *review denied* (1972).

In our de novo review, after intensive study of the medical evidence—and there is no question of credibility here, only the weight to be given it—we find ourselves in substantial doubt as to whether the *disabling* angina is merely a result of natural progression of the underlying heart disease which was bound to occur at or about the time it did, or whether it was "caused" in some measure by the unusual stress and exertion incident to claimant's work on January 17. In the reasoning that leads to our determination, there is some deference to the "expertise" that is accorded to the administrative findings of the Workmen's Compensation Board. *Romero v. Compensation Department,* 250 Or 368, 440 P2d 866 (1968); *Ryf v. Hoffman Construction Co.,* 254 Or 624, 632, 459 P2d 991 (1969). Thus, with the substantial doubt we have, we conclude claimant has failed to carry by a preponderance of the evidence his burden of proving his disability to be work related.

Reversed.