Argued April 1, reversed May 1, 1968

IN THE MATTER OF THE COMPENSATION OF
JERRY F. CODAY, CLAIMANT,
CODAY, *Respondent, v.* WILLAMETTE TUG &
BARGE COMPANY, *Appellant.*
440 P. 2d 224

*Kenneth E. Roberts,* Portland, argued the cause for appellant. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson and Ridgeway K. Foley, Jr., Portland.

*Burton H. Bennett,* Portland, argued the cause for respondent. With him on the brief were Franklin, Olsen, Bennett, DesBrisay & Jolles, Portland.

Robert Y. Thornton, Attorney General, Salem, Wallace Carpenter, Chief Counsel for State Compensation Department, and Donald J. Howe, Assistant Attorney General, Salem, filed a brief amicus curiae for State Compensation Department.

James H. Clarke, Lewis K. Scott, and John C. Wright, Jr., filed a brief amici curiae.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an appeal from a judgment of the circuit court for Multnomah county reversing an order of the Workmen's Compensation Board which had denied plaintiff compensation for an injury alleged to have arisen out of and in the course of his employment.

Plaintiff suffered a heart attack while on the job as foreman of a crew operating a pile driver owned by defendant employer. Plaintiff contends that his injury was compensable under the provisions of the new Workmen's Compensation Act (ORS ch 656). De-

fendant contends that the injury was not one "arising out of" plaintiff's employment, and therefore was not compensable (ORS 656.002(6)).

The case was first heard by a hearing officer who found in favor of plaintiff. No medical testimony was presented at that hearing. Upon appeal by defendant, the Workmen's Compensation Board remanded the case on the ground that the hearing officer should have heard medical testimony. A second hearing officer took testimony from two doctors, one who testified on behalf of plaintiff and the other on behalf of defendant. Plaintiff's medical witness testified that the work plaintiff was performing at the time he was stricken was a material contributing factor in causing the heart attack. Defendant's medical witness expressed a contrary opinion. The hearing officer denied plaintiff's claim. Upon review, the Board affirmed the hearing officer. Plaintiff then sought judicial review of the Board's order in the circuit court. The circuit court found for plaintiff and ordered the Board to award plaintiff the benefits provided under the Workmen's Compensation Act.

The principal issue on appeal is the scope of judicial review of the administrative findings. The controlling statute is ORS 656.298(6), which reads as follows:

"The circuit court review shall be by a judge, without a jury, on the entire record forwarded by the board. The judge may remand the case to the hearing officer for further evidence taking, correction or other necessary action. However, the judge may hear additional evidence concerning disability that was not obtainable at the time of the hearing. The judge may affirm, reverse, modify or supplement the order appealed from, and make such

disposition of the case as the judge determines to be appropriate."

Defendant argues that under this statute if there is substantial evidence to support the administrative finding the circuit court must affirm the administrative determination. Plaintiff contends, and the trial court held, that the statute requires a de novo judicial review on the record forwarded by the Board.

We are of the opinion that the trial court's interpretation of the statute is correct. We reach this conclusion upon the basis of the language of the statute as illuminated by its legislative history. The last sentence of ORS 656.298(6) describes the power of the court to review in very broad terms. The "judge may affirm, reverse, modify or supplement the order appealed from and make such disposition of the case as the judge determines to be appropriate." We do not read the other provisions of subsection (6), empowering the court to hear additional evidence concerning disability or to remand the case to the hearing officer for further evidence, as a limitation on the broad power of review described in the last sentence.

There is a similar broad power vested in the Board to review the determination of the hearing officer. This is found in ORS 656.295(5)(6). Subsection (5) provides for review by the Board on the record made in the hearing before the hearing officer, with the power to remand for further evidence.[①] Subsection (6) then provides as follows:

"(6) The board may affirm, reverse, modify or supplement the order of the hearing officer and

---

① ORS 656.295(5) reads:

"The review by the board shall be based upon the record submitted to it under subsection (3) of this section and such

make such disposition of the case as it determines to be appropriate. It shall make its decision within 30 days after the review."

The language of this subsection is strikingly similar to ORS 656.298(6). It does not seem likely that the legislature would intend to make the hearing officer the primary adjudicative agency in the administrative hierarchy and to limit the Board's reviewing power to a determination of whether there was substantial evidence to support the hearing officer's findings. Questions of fact dealt with in administrative hearings often merge into questions of legislative policy and it would seem that the legislature would intend that the Board, rather than the hearing officer, was to have this policy-making function.

It is argued that because of the difference in function between administrative agencies and courts an interpretation which vests broad powers of review in the Board is not antithetical to an interpretation limiting judicial review to a narrow scope. We think this begs the question. The answer is certainly not found in the language of the statutes and when one looks outside the statute for the legislative purpose there is no evidence to indicate that the review powers of the Board and the courts was to be different.

Both parties have relied upon the minutes of legislative committees and other materials relating to the legislative history of ORS 656.298(6). These materials vividly tell the story of the struggle between the

oral or written argument as it may receive. However, if the board determines that a case has been improperly, incompletely or otherwise insufficiently developed or heard by the hearing officer, it may remand the case to the hearing officer for further evidence taking, correction or other necessary action."

forces for and against broad judicial review. In that struggle there were proponents for the retention of the procedure under the old Workmen's Compensation Act which provided for a jury trial upon an appeal from the administrative order. At the other extreme were those who proposed the so-called "substantial evidence rule." The legislative history shows that the present statute was a compromise between these two extreme views. The record made in the legislative hearings quite clearly demonstrates that the compromise was effected by eliminating the jury trial and vesting in the circuit judge the power to review de novo the record made in the administrative agency.

Upon the basis of the statutory language and the legislative history, we find ourselves compelled to construe ORS 656.298(6) as providing for a de novo review by the circuit court upon the record forwarded by the Board.

■ Upon appeal from the circuit court to this court, the parties again are entitled to a de novo review on the record made in the administrative agency (and on any further record made in the circuit court on the issue of disability). This is by force of ORS 656.301 which provides that upon appeal from the circuit court to this court, "the scope of review [is] to be the same as that of the circuit court."

It has been argued that this construction of the statutes produces an unsatisfactory method of review. Thus it is pointed out that by giving the circuit court power to nullify the findings of the Board and then by giving the Supreme Court the power to nullify the findings of the circuit court, not only is the adjudicative process unnecessarily fragmentized and extended but, more important, the Board is prevented from working out on a case by case basis a pattern of rules

in the workmen's compensation field reflecting the legislative policy underlying the Workmen's Compensation Act.

■ This and other criticism of the review provisions of the Workmen's Compensation Act may be well taken but obviously it is not within the power of this court to rewrite the statutes.

■ Defendant further contends that under any theory of the scope of review the trial court's finding cannot be supported because there was no evidence of a compensable injury. An appraisal of this contention requires a more detailed recitation of the facts.

Plaintiff, aged 59, was employed by defendant as a foreman of a pile driving crew. On Monday, January 31, 1966, plaintiff suffered a heart attack under the following circumstances. Plaintiff and his crew had installed a pile. It was necessary to add another section to the pile which had been driven. Plaintiff placed a steel collar (referred to as a "can") around the top of the pile which formed a receptacle to receive another section of piling. Another section of pile about 18 to 20 feet in length and ten inches in diameter was hoisted by machinery and was directed toward the pile already installed. Plaintiff attempted to maneuver the section into the "can" on the pile already installed. Plaintiff testified: "I reached up to put it on the can and I blacked out." His testimony continues:

"Q. Did you have ahold of this piling at the time that you passed out the first time?
"A. Absolutely.

"Q. You were tugging against it, pulling?
"A. I was spotting it over the cans."

Two other witnesses, both members of the pile driving crew, testified concerning plaintiff's activities

on the job. One of them testified that he could not tell whether plaintiff "had his hands on the stub pile or not." The other testified that claimant "reached up like he was going to grab the pile and he didn't have hold of it or he might have before but he grabbed his chest," then turned around, took about two steps and fell face forward into a puddle of water. A fellow workman pulled his head out of the water and took him to the boiler room where he recovered consciousness, but he blacked out again and was then taken to the hospital.

It is undisputed that plaintiff was engaged in his usual work activity. Plaintiff testified that on Saturday evening, January 29, 1966, while playing cards at the house of a neighbor, he experienced a tightness in the throat similar to that experienced when one takes a drink of water too fast and cannot swallow it. This sensation occurred again during the evening and plaintiff took some Bisodol, an antacid. Plaintiff also felt some discomfort the following day.

The medical testimony of Dr. Charles Grossman, plaintiff's witness, and Dr. Wayne Rogers, defendant's witness, is accurately summarized by the trial judge as follows:

> "Dr. Grossman testified that, in his opinion, the effort in which the claimant was involved and the activities which he was performing at the time were a 'material contributing factor to the development of his coronary thrombosis.' Dr. Grossman stated that his diagnosis and his opinion as to causation was not altered by the fact that claimant had a tightening of the throat on Saturday night prior to the occurrence of this attack. Dr. Grossman testified that he couldn't say whether or not the claimant would have had a heart attack had he stayed

home in bed on Monday. * * * Dr. Grossman went on to say that the exertion of reaching overhead and pushing a swinging pile were the material contributing factors to the heart attack.

"Dr. Rogers, on the other hand, stated that, in his opinion, the claimant had suffered a coronary thrombosis on the previous weekend when he felt the tightening of his throat. Thereafter he was in a critical state of health when he arrived at work on Monday morning, and the manipulation of the piling was 'coincidental' to a fall, since he could have fallen any time between Saturday night and Monday morning. Dr. Rogers stated that if stress were sufficient, changes in heart action are more likely to occur with stress than without. Dr. Rogers firmly stated in his opinion that the claimant's work 'was not a material contributing factor' to his heart condition. In answer to a question by the hearings officer he said that 'once the thrombosis has happened, then any sort of activity may contribute to a change in the heart action.' Dr. Rogers went on to say that * * * claimant's exertion on Monday was '* * * a contributing factor, but not particularly material because he wasn't doing anything unusual.' He went on to say that the contribution to the heart attack made by the activity of handling the piling was 'not material because it didn't represent any particular exertion but it was just a modest physical activity, and it may have contributed a little but not especially.' "

Under our interpretation of ORS 656.298(6) we must draw our own inferences from the evidence appearing in the record. The first question is whether there is any evidence that plaintiff exerted himself in carrying out his job. This is a question of legal causation. The second question is whether the exertion was a material contributing factor in producing the heart attack. This a question of medical causation.

In passing upon the preliminary question of legal causation the trier of fact may decide that there was no work movement whatsoever or that it was so minimal that no one, including a medical witness, could reasonably say that the exertion could materially contribute to a heart attack. The point at which the trier of fact draws the line in deciding whether there is legal causation will also depend upon the standard which the court sets in advance in fixing the claimant's burden of proof.

In some jurisdictions that standard is described by the rule requiring claimant to show that he exerted unusual strain in carrying out his job. We have previously set a less rigid standard recognizing that the claimant's usual exertion in his employment is enough to establish the necessary legal causal connection. Thus in *Olson v. State Ind. Acc. Com.,* 222 Or 407, 352 P2d 1096 (1960) we took the position that the mere movement of the claimant's arm in engaging a hand lever clutch was enough to constitute a basis for the conclusion of medical witness that the exertion was a material factor in causing claimant's heart attack.

We find that the activity in the present case involved exertion sufficient to establish legal causation. The hearing officer reached the opposite conclusion. It is not clear from the testimony the extent of plaintiff's exertion at the time he suffered the attack. Plaintiff testified that he reached up and was guiding the stub pile into the collar or "can" at the time he was stricken. When asked whether he was "tugging against" the stub, he answered equivocally, "I was spotting it over the cans." The answer is not directly responsive and like much of his testimony it is not clear whether he was simply giving a general descrip-

tion of his job (note the reference to the plural "cans".) or testifying as to his specific work movement at the time of the attack. The hearing officer interpreted the evidence as showing that "If his hands were actually in contact with the pile they were simply resting on the pile and claimant was not exerting any pressure." The hearing officer's conclusion is not unreasonable considering the vagueness of the testimony relating to plaintiff's specific conduct at the time of the attack. However, we have given a more generous interpretation to the testimony. We accept as true plaintiff's assertion that he was "spotting [the stub] over the cans," and therefore assume there was legal causation.

■ The question of medical causation remains. Our function under ORS 656.301 in reviewing questions of medical causation is to be contrasted with the scope of review in this court under the previous Workmen's Compensation Law. Our power to review under the previous law may be illustrated by the case of *Olson v. State Ind. Acc. Com., supra.* In that case there was conflicting medical testimony as to whether the exertion was a material factor in causing the attack. We held that we were "not at liberty to decide which medical hypothesis [was] correct" and that we were required to accept the trier of facts' determination in choosing between the two conflicting medical views. (222 Or at 416.) Our function in the present case is different than it was in the *Olson* case. Under ORS 656.298(6) we examine the record de novo as triers of fact and are free in the present case to choose which medical hypothesis is correct. If in the *Olson* case we had been vested with the power of review we now have, it is possible that we, as the triers of fact, would have concluded from the evidence that the work move-

ment was not a material factor in causing the attack.[⊗] By the same token, we recognize that another trier of fact examining the evidence in the present case might reasonably reach a conclusion opposite to ours.

As the triers of fact we have concluded that plaintiff failed to prove medical causation. As we have previously noted, the medical testimony was in direct conflict. We believe that Dr. Rogers' explanation of the cause of plaintiff's heart attack is more reasonable than that given by Dr. Grossman. We are influenced to some extent by the fact that Dr. Rogers is a specialist in cardiovascular diseases, whereas Dr. Grossman is not. In addition to this, we are influenced by the manner in which the respective medical witnesses answered the questions put to them. The hearing officer reached the same conclusion on the question of medical causation.

We hold that plaintiff did not carry his burden of proof and that, therefore, the trial court erred in reversing the Board's order.

The judgment of the trial court is reversed.

---

[⊗] It should be added that if we presently had the same power of review as we had in Olson v. State Ind. Acc. Com., supra, applying the reasoning in that case to the case before us, we would hold that the determination of the hearing officer denying the claim would be binding upon us.