Argued October 28, affirmed November 18, 1974

MILLER, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND, *Respondent.*

528 P2d 94

*Robert A. Bennett,* Portland, argued the cause for appellant. With him on the brief were Willner, Bennett, Riggs & Skarstad, Portland.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

SCHWAB, C. J.

This case involves an occupational disease claim under the Workmen's Compensation Law. The sole question is factual. Did the claimant sustain the burden of proving that his employment as a firefighter was a material contributing cause of his hypertension. *Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968); *Cardwell v. SAIF,* 6 Or App 175, 486 P2d 587, Sup Ct *review denied* (1971). The hearing officer found that the claimant had sustained his burden. The Workmen's Compensation Board and the circuit court found that he had not. We agree with the latter.

Claimant was employed by the city of Milwaukie from July 1952 to July 1957 when he voluntarily terminated his employment. He was reemployed as a firefighter in January of 1964 until his termination by the city in December of 1972. He first experienced chest pains in May of 1972. He was subsequently hospitalized and it was then that the diagnosis of hypertension was made. There is voluminous medical evidence in the record. However, only two physicians whose reports are in the record expressed any opinion as to the relation between claimant's employment and his hypertension. Dr. Payne who treated the claimant commencing in November 1972 found some causal relation between the high blood pressure and claimant's work; Dr. Griswold found none.

On June 25, 1973, Dr. Payne wrote a three-page report in which he stated that he had first seen claimant on November 14, 1972. The report indicates that Dr. Payne had reviewed the claimant's medical history, including his history of hospitalization in 1972, and that he had taken a history from the claimant. It sets forth no details of the history he obtained from claim-

ant, and says nothing about claimant's work or the nature of it. Significantly, it does state:

"He takes * * * Valium occasionally for anxiety. Because of the emotional stresses of his *nonwork* situation, the situational depression seemed to manifest and he was placed on Elavil * * *." (Emphasis supplied.)

The only other report from Dr. Payne was made on November 8, 1973. It states:

"You have a full report regarding Mr. Eugene Miller's situation. In response to the question of high blood pressure and its relation to fire fighting, I would feel from my history and findings that this problem had occured [sic] during the time he was employed as a fire fighter, and that the stresses of his job did contribute to his high blood pressure."

Dr. Griswold's report shows that the documents he examined in reaching his conclusions included not only claimant's medical histories and hospital records, but also a written statement by claimant and a record of an interview with claimant, claimant's fire department time sheets for the year 1972, records of fires attended by claimant in 1971 and 1972, and interviews with some of claimant's supervisors. The relevant conclusions contained in his report are:

"* * * * *

"1. This man in 1965 had a normal blood pressure, but the last year or so it showed some significant elevation with diastolics around 100 mm Hg. However, in the hospital as late as March 1972 his blood pressure returned to normal after only 3 days of bedrest.

"2. With regard to his hypertension there has been no evidence of left ventricular hypertrophy; no unusual axis deviation. He probably has labile hypertension. *His obesity is a major contributing*

*factor to the development of his blood pressure readings which are elevated.*

"Although he was admitted 3 times, once to Bess Kaiser Hospital and twice to Dwyer Memorial Hospital in 1972-73 for substernal pain, at no time has he had any evidence that he actually has coronary artery disease.

"There is no evidence that there is any electrocardiographic abnormality or any cardiac disease. Certainly, on the basis of the symptomatology, one could not make a positive diagnosis of arterial sclerotic heart disease. It would be necessary to produce in this man a significant weight reduction program and coronary arteriography in order to arrive at such a conclusion.

"With regard to any work relationship in the development of his hypertension, there is nothing in the work history that would indicate any factors which would contribute to the development of his hypertension. An obese individual of this age frequently develops hypertension based more upon a genetic or family background, and not necessarily related to any job activity. Certainly, there is nothing known about smoke inhalation which results in hypertension or possible acceleration or artherogenesis. Also, he was doing two jobs, running a house moving business as well as being a fireman.

"It would be my medical opinion based upon reasonable medical probability that the job activity as presented to me in no way contributed to any possible symptomatology that possibly could be related to his cardiovascular system.

"* * * * *." (Emphasis supplied.)

Affirmed.