Argued April 26, reversed June 28, reconsideration denied July 28, petition for review denied September 1, 1976

SUMMIT, *Appellant,*

*v.*

WEYERHAEUSER COMPANY, *Respondent.*

(No. 35656, CA 5717)

551 P2d 490

*Donald R. Wilson,* Portland, argued the cause for appellant. With him on the briefs were Pozzi, Wilson & Atchison, Portland.

*Paul L. Roess,* Coos Bay, argued the cause for respondent. With him on the brief were Newhouse, Foss, Whitty & Roess, Coos Bay.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

**FOLEY, J.**

Claimant filed a workman's compensation claim for a job-related heart attack allegedly suffered in the course of his employment with Weyerhaeuser Company. The employer denied his claim. After hearing, the referee allowed the claim and the Workmen's Compensation Board affirmed. The circuit court reversed, ruling that claimant had failed to give timely notice of his claim and was estopped because he had applied for and accepted Nelson Trust Fund benefits. We reverse.

Claimant, a 50-year-old millwright had worked for his employer since 1959. He became a millwright in 1971 and has worked at that job since. Several weeks prior to September 22, 1973, claimant testified he had developed chest pains in the center of his chest. He said he first noticed these pains when he exerted himself but he continued working. On Friday, September 21, 1973, claimant climbed stairs to repair some machinery. Upon climbing the stairs and later stepping down off the machinery, he stated that he suffered pain in his chest and down his left arm and he said the pain was so severe that he nearly fainted. However, he worked out the shift and went home from work that night at 11 p.m. He returned to work the next day at 7 a.m., a Saturday, and again had severe chest pains when he exerted himself but he completed that shift also.

During the two days following the onset of the claimant's painful symptoms, he stated that he noticed that even minor physical activity at work would precipitate severe chest pains. As claimant testified at the hearing:

"I couldn't walk up the stairs or lift, or tug — when I'd lift or tug, why, I'd get chest pains."

Claimant engaged in strenuous activity only on the job; at home he rested and suffered no pain. On Monday, September 24, 1973, claimant called his foreman and explained that he would be off work for an indefinite period and went to the North Bend Medical

Group. There he was given an electrocardiogram and was referred to Dr. George Potter. Dr. Potter put him on a treadmill for a stress electrocardiogram during which test claimant suffered severe pain and almost fainted.

Claimant was then referred to Dr. Leonard Rose and was admitted to St. Vincent Hospital in Portland on October 13, 1973, because of progressive chest pain. The diagnosis was arteriosclerotic heart disease; his condition included coronary insufficiency with possible impending infarction syndrome. Tests were made and the findings indicated a proximal occlusion of the right coronary artery. Five days later, claimant was taken to cardiac surgery and a single vein graft was performed from aorta to the right coronary artery. The procedure was sufficiently successful to allow the claimant to return to his occupation as a millwright.

On April 28, 1974, claimant was again admitted to the emergency room of the Keizer Memorial Hospital at North Bend, Oregon, with right chest pain. His final diagnosis included arteriosclerotic heart disease. An EKG showed possible ischemia with no definite infarction.

On April 28, 1974, an off-the-job claim was made against an insurance carrier (Nelson Trust Fund) for the acute bronchitis and possible arteriosclerotic heart disease, and for the care and treatment thereof. The claim was made and the compensation received from September 24, 1973, to February 1974. On June 5, 1974, claimant filed a workman's compensation claim for a job-related heart attack in September 1973. As claimant stated at the hearing, he did not file the claim earlier because,

"* * * I did not know that heart conditions would be caused by, you know, working."

On June 6, 1974, the employer was notified of this claim and claimant returned to work in July of 1974.

Medical evidence from two doctors was introduced

at the hearing. Dr. Leonard B. Rose, the treating doctor, found that claimant had suffered a total occlusion of his right coronary artery. Claimant did not develop a severe infarction because he had some collateral circulation from the left coronary artery and he was treated successfully with cardiosurgery. Dr. Rose opined that it was difficult to gauge the exact contribution of claimant's work effort to the worsening of his condition, but that heavy work could very well have been an important derivative factor in worsening his condition and the heavy physical work performed by claimant at a time when his condition was progressing was a definite aggravating factor. Dr. Edwin Quinn, who testified at the hearing for the employer, opined that claimant had a slowly progressing arteriosclerotic heart disease and suffered from impeded blood flow in that area. He concluded that the work condition was not a material contributing factor to claimant's heart problem. He believed that the pain experienced by claimant was merely a danger signal and that the work activity did not hasten either the operation or the heart condition.

The referee properly analyzed the problem and we adopt the following from his opinion and order:

"* * * * *

"The question here is whether there is a causal connection, both legal and medical, between claimant's work activities and his condition requiring medical services for his heart problems. In order for an award of compensation to be merited, the evidence must support a finding that both legal and medical causation exist. It is a fundamental principle of the Workmen's Compensation Law that the claimant must prove, by a preponderance of evidence, that a compensable injury was sustained, *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971).

"The test for determining medical causation is whether the stress of exertion connected with decedent's job was a materially contributing factor to his later disabling condition, *Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968); *Mayes v. Compensation Dept.,*

1 Or App 234, 461 P2d 841 (1969). This is a question of fact, particularly where there are conflicting medical opinions, *Sahnow v. Fireman's Fund Ins. Co.,* 3 Or App 164, 470 P2d 378 (1970).

"Legal causation may be proved by showing claimant was exerting himself in a normal and usual way in performance of his job. He need not demonstrate unusual stress, *Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969); *Coday v. Willamette Tug & Barge,* (supra). It is considered that there was sufficient exertion shown here in claimant climbing stairs and fixing machinery, to constitute the work-related exertion necessary to establish legal causation.

"Next, considering the question of medical causation; while work activity must have more than a minimal effect, *Cardwell v. SAIF,* 6 Or App 175, 486 P2d 587 (1971), it is only necessary that it be a material factor. It need not be the sole or primary cause, but only the precipitating factor, and it need not be unusual, *Clayton v. Compensation Department, (supra).*

"The medical evidence indicates that claimant had developing, progressive arteriosclerotic heart disease. Dr. Quinn believed that this condition was constantly developing at home or at work, was a natural progression, and that the work condition was not a materially contributing factor. Dr. Rose, on the other hand, recognizing that his condition was progressing, indicates that had he not been exerting himself at work, his condition may have stabilized, and he may not have required hospitalization and surgery. The medical evidence, while appearing contradictory, is really not so, as it presents a picture of claimant as having the slowly developing, progressive arteriosclerotic heart condition, and while one may speculate on what may have happened had he remained at rest, the fact remains that he did work that weekend, and the exertion or work activity was a precipitating factor which caused his subsequent hospitalization. * * *

"* * * * *."

The referee then found that claimant had met the burden imposed upon him of proving a compensable injury as alleged. The Board agreed with the referee. We, in turn, agree with the referee and the Board.

On the issue of the timeliness of notice of claim, we again adopt the following from the analysis of the referee:

"ORS 656.265 provides that notice of accident resulting in injury shall be given not later than 30 days, and failure to give the notice bars a claim, unless the employer had knowledge of the injury, or notice is given within one year and good cause is given for failure to give notice within 30 days after the accident. These factors are considered in the disjunctive *Logan v. Boise Cascade Corp.*, 5 Or App 636, 485 P2d 441 (1971), and the claim is not barred if any one of these is satisfied, *Wilson v. State Acc. Ins. Fund,* 3 Or App 573, 475 P2d 992 (1970). The statute provides for notice of the accident, and notice of the accident, is not necessarily notice of a claim * * *. Here claimant notified his foreman almost immediately of his injury, and while the employer had good reason to believe that the claim would be filed against the off-the-job insurance carrier, there is sufficient notice of the injury so as not to bar a claim pursuant to ORS 656.265. The employer further contends that he has been prejudiced by the late notice in this case of the claim, and that certain witnesses have since left his employment. However, there is no indication that the presence of witnesses would have materially changed the outcome in this case, as there would be little dispute that claimant climbed the steps as indicated, and was subsequently hospitalized, and the question here is primarily a medical one.

"* * * * *."

Finally, we disagree with the circuit court's finding that claimant is estopped to contend his condition is compensable by virtue of his receipt of Nelson Trust Fund benefits. At the time claimant's wife filed for those benefits, neither she nor claimant was aware that claimant's heart problem was within the scope of the Workmen's Compensation Law. It was not a matter of claimant's making an informed choice between Nelson Trust Fund benefits and workmen's compensation. When he learned of the availability of workmen's compensation, claimant's actions were consistent with pursuing that remedy as prescribed by ORS 656.265.

Reversed.