# FOLEY, *Respondent,*

*v.*

# STATE ACCIDENT INSURANCE FUND, *Appellant.*

## (No. 76-720, CA 7183)

562 P2d 593

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Paul L. Roess, Coos Bay, argued the cause for respondent. With him on the brief were Newhouse, Foss, Whitty & Roess, Coos Bay.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

In this worker's compensation case the beneficiaries claim benefits due to the death of Foley from a heart attack while on the job.[1] The State Accident Insurance Fund (Fund) denied the claim. The referee, the Workmen's Compensation Board and the circuit court all allowed the claim and the Fund appeals. The issues are whether there was on the job stress sufficient to satisfy the requirements of legal causation and medical evidence to prove a causal link between any stress and the fatal heart attack.

Decedent had worked for the Elkside Lumber Company for approximately 20 years. At the time of his death he was employed as a head sawyer on the swing shift from 5 p.m. until 1:45 a.m. One of his regular duties as head sawyer was to assist in changing a saw blade at the mill in order to replace a dull blade with a newly sharpened one. This process occurs on a regular basis every four hours during a shift. On decedent's shift the change is made at 9 p.m. just prior to the lunch break and at the end of the shift at 1:45 a.m. The blade changing procedure requires three workers; one to operate an electric hoist to move the blade and two men to lift the blade and slide it into position. The referee in his order gave an accurate description of the process:

"Evidence was introduced on behalf of the claimant to indicate that the saw blade in question weighed 192 pounds when new, and becoming slightly lighter each time it was filed. * * * Two men would grasp the blade, one on either side, and lift it slightly to free it from the top pulley, then slide it onto a cradle, which had previously been put into position by means of a hoist. The hoist would then allow the cradle to be lowered, the saw blade would be placed onto a cart, and taken to the saw filing room. A new saw would be returned in the

[1]There was no autopsy performed, however, the death certificate listed the immediate cause of death as "Occlusive Coronary Artery Disease." Although the Fund contested this conclusion before the referee, on oral argument in this court the Fund agreed the cause of death was not an issue on appeal.

cart, the process would be reversed, and when the cradle was again adjacent to the top pulley, the two men would lift and slide the replacement saw blade from the cradle onto the pulley. Each lifting and sliding maneuver would take only a few seconds, possibly four or five. The entire operation, removing the blade, lowering it, changing blades, raising the replacement blade, and replacing the replacement blade, would take possibly five minutes."

During the lifting process the weight of the saw blade is borne by the two men for the approximately three to four seconds necessary to position the blade. On the night of his death decedent assisted in changing the blade at 9 p.m. by helping to lift and slide the blade into position on the drive pulley. After the saw blade was in position the two men assisting decedent went to lunch. Approximately six minutes later decedent was found by an employe lying unconscious on the floor partially in the saw room where the operating controls of the saw are located. He was taken to the hospital where he was pronounced dead on arrival.

Decedent had long-standing medical problems and had been under the care of Dr. McLean since 1961. He was taking medication for high blood pressure, arthritis and sinus congestion up to the time of his death. His wife testified he took the blood pressure pills "religiously." He also suffered from hypertension in some measure associated with the emotional stress of his employment. Approximately two weeks before his death he was seen by Dr. Courtney who prescribed an anti-inflammation drug in response to symptoms of "[b]ack pain in Dorsal & high lumbar area." Approximately nine months prior to his death decedent had consulted with Dr. Faber who made the following entry in his chart notes:

"* * * His present complaint is of back and left hip pain for two weeks. Examination is completely unremarkable. The heart and lungs are clear and there are normal sounds. His blood pressure is 155/105."

In the afternoon just prior to his death he was feeling well and worked on a garage he was building at

home. He ate a full meal and left for work at approximately 4:15 p.m. In the two week period prior to his death his widow testified he was in good spirits and "seemed all right."

■ In order to establish a compensable heart case claimant must establish both legal and medical causation between the work activities and the heart attack. *Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968). Legal causation may be proved by showing decedent was exerting himself in a normal and usual way in performing his job. There is no requirement the stress experienced be unusual. *Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969); *Coday v. Willamette Tug & Barge, supra; Anderson v. SAIF,* 5 Or App 580, 485 P2d 1236 (1971). In *Clayton v. Compensation Department, supra,* our Supreme Court determined that exertion or stress due to employment can be a legal causative factor in heart attack cases brought under the Workmen's Compensation Act.

■ Legal causation, despite its title, is a question of fact. The trier of fact must determine if there was exertion on the job and whether the exertion is so minimal that no one would consider it sufficient as a materially contributing factor in a heart attack. We review de novo and must draw our own inferences from the evidence in the record. *Coday v. Willamette Tug & Barge, supra.*

■ Decedent, while performing his usual duty in changing the saw blade, was subjected to exertion sufficient to establish legal cause. Although the weight of the saw was borne by the two men for only three to four seconds there was considerable exertion required to lift the saw blade and move it laterally into position on the drive pulley. *See Coday v. Willamette Tug & Barge, supra; Olson v. State Ind. Acc. Com.,* 222 Or 407, 352 P2d 1096 (1960).

■■ Once legal cause is determined the next question is whether there is medical causation. The test for determining medical causation is whether the exertion

connected with decedent's employment was a materially contributing factor to his heart attack. Medical causation is a fact question which must be established by evidence from medical experts. The work activity need not be the sole or primary cause of the heart attack but only the precipitating factor. *Coday v. Willamette Tug & Barge, supra.* It must, however, have more than a minimal effect in the cause of the attack. *Cardwell v. SAIF,* 6 Or App 175, 486 P2d 587, Sup Ct *review denied* (1971).

No medical expert testified at the hearing, however, written reports and opinions were received from two doctors on behalf of the Fund and two doctors on behalf of claimants. Two of decedent's treating doctors were unable to give an opinion principally because of their minimal contact with decedent.

Dr. Harwood, a medical consultant to the Fund, in response to the following question;

> "From the medical information & the investigation, do you feel that the deceased claimant's work activity caused or materially contributed to the coronary occlusion?"

gave his written opinion;

> "No, because according to Jerry Rogers (Plant Supervisor) the claimant was not exposed to any unusual physical or mental stress prior to, or at the time of the heart attack. He was merely doing his customary and usual duties (pushing buttons and operating levers) as head saw man. The head saw was completely automated and required no physical effort to operate.
>
> "* * * * *
>
> "The claimant, no doubt, suffered from a long standing pre-existing arteriosclerotic heart disease which had progressed to the point of precipitation into coronary thrombosis, M.I. and death."

From this short opinion it becomes obvious Dr. Harwood was not aware of the critical information respecting the physical exertion attendant upon changing the saw blade. The opinion, being based on

incomplete information, is diluted considerably. The doctor addressed the general question as to whether his work activity caused the heart attack but did not address the specific question regarding a medically causal link between the saw changing activity and the attack.

Dr. Griswold, a cardiologist, presented a letter opinion which was received in evidence. He opined:

"I have carefully reviewed all of the data you furnished me concerning the case of Frank A. Foley, deceased.

"Unless there are new facts that come out in this case indicating specific work activity that could precipitate a sudden rise in blood pressure and heart rate it would be my medical opinion that there is no relationship as defined in these reports between his work activity and the development of his fatal heart attack."

The record does not disclose what information was supplied to Dr. Griswold by the Fund in soliciting his opinion. We are thus unable to tell whether his conclusion is based on a consideration of the exertion decedent experienced while changing the saw blade. The opinion can fairly be read that if there were work activity precipitating a sudden rise in blood pressure and heart rate he would conclude the heart attack developed from the work activity.

Dr. McLean, decedent's principal treating physician, was equivocal in his opinion and thus it is of little assistance to the court in resolving the question of medical cause.

Dr. Murray, a specialist in internal medicine, submitted a letter opinion in response to claimants' request. After Dr. Murray's letter was received in evidence the Fund was allowed a continuance to cross-examine him in a deposition which was subsequently made a part of the record.

Dr. Murray was provided with decedent's medical records and a description of his work activities on the

day he died including the procedure followed in changing the saw blade. He concluded in his letter opinion:

> "In any event, whether this was a myocardial infarction or stroke or bleeding into the substance of the brain, the fact remains that the patient did exert himself following which he collapsed and died. As is known, the process of arteriosclerosis whether it involves the heart or the brain is a long time process and is not something that would occur suddenly with exertion. However, when a patient does lift a heavy object following which he collapses, then the fact that the event occurred at that particular time has to be tied in to the event that occurred. I feel for this reason, that there is certainly a reasonable probability that the exertion which Mr. Foley underwent probably was the cause of his demise occurring at that particular time."

On cross-examination in the deposition the Fund elicited the following from Dr. Murray:

> "I think the basic assumption is correct, that he was going to have a heart attack, if this is indeed what he had, and I assume that it is, that he was going to have it sometime and that this would be the natural progression of his disease, this was going to happen, he was going this direction. So from that standpoint I would have to agree that there is nothing in here that makes me state that this wasn't a natural progression. However, I think we have an indication that possibly the exertion that he went through in changing his blade may have been the attributing cause to the happening at this particular time —
>
> "* * * * *
>
> "—rather than two, three weeks, four months later, he was going to have it.
>
> "* * * * *
>
> "Q. Doctor, can you state with any reasonable medical probability why he didn't have — if he did have a myocardial infarction — why he didn't have it the last time he picked up the telephone, for instance?
>
> "A. Basically because the situation was not correct for him to have it at that time.
>
> "Q. You mean his arteriosclerosis had not advanced at that point?

"A. It had not advanced at that point or he did not put enough stress on his body to demand the heart to work more strongly at that particular time to set off the procedure.

"Q. Doctor, how long do you have to have stress or exertion to make the heart work as hard as you are talking about here?

"A. Basically you don't have to work very long. The problem comes with the sudden exertion, like the sudden lifting of a heavy weight or the sudden pushing of the car or this type of thing rather than, you know, a prolonged working. It's a sudden demand placed on a heart where you really strain your muscles for a short period of time. This really calls forth a whole bunch of changes in the body that speed up the heart rate, push up the blood pressure, increase the blood supply to the various muscles and so on and it's particularly this sudden exertion that causes the trouble, it doesn't have to be any particular period of time.

"* * * * *."

Dr. Murray did not change his basic opinion on cross-examination that if decedent put forth enough exertion in changing the saw blade this would be enough to precipitate the heart attack. Decedent's lifting of his pro rata share of the saw blade, approximately 90-95 pounds, would constitute sufficient stress under Dr. Murray's analysis. In describing the type of exertion he considered sufficient Dr. Murray said in his deposition:

"* * * If I went out to lift a hundred-pound weight, just straining to try and lift it off the floor, although maybe I only try one or two seconds the strain at that time has put a tremendous amount of pressure on my body and heart and lungs and muscles and all things involved."

In summarizing the medical opinions Dr. Harwood's conclusion, being based on incomplete and inaccurate information, must be disregarded. Dr. McLean's opinion is equivocal and of little assistance in resolving the medical causation issue. Dr. Griswold apparently did not have information relating to deced-

ent's activities in changing the saw blade and consequently his opinion does not address the relationship between that activity and the heart attack. His opinion is not in substance conflicting with that of Dr. Murray, whose opinion we find sufficiently forges the medical link between legal cause and the heart attack.

■■ The fact the decedent, suffering from arteriosclerosis, may have had a heart attack in the very near future from some other exertion of the same or lesser intensity does not deny compensation. The issue of medical causation is whether the exertion associated with the job is a material precipitating cause of the attack. Claimants have sustained their burden of proof.

Affirmed.