Argued and submitted September 12,
reversed December 24, 1979

In the Matter of the Compensation of
the Beneficiaries of Charles Mawhinney,
Deceased,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(WCB Case Nos. 77-6211 & 77-6994 CA 14336)

604 P2d 430

Allen T. Murphy, Jr., Portland, argued the cause for appellant. With him on the brief was Richardson, Murphy & Nelson, Portland.

Darrell E. Bewley, Associate Counsel of Attorneys for SAIF, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, SAIF, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

The issue in this workers' compensation appeal is factual: Was there a causal connection, both legal and medical, between decedent's work activities and his fatal heart attack?

The State Accident Insurance Fund (SAIF) denied the widow's claim. The referee, relying primarily on testimony of the widow and a fellow employee, reversed, concluding that the claim had been established both legally and medically by a preponderance of evidence. On appeal to the Board, the Board reversed the referee and reinstated SAIF's denial on the ground that conflicts in testimony raised substantial doubt whether decedent's work activity on February 16 materially contributed to his heart attack.

Decedent, aged 54, had had a heart attack in 1974. He made a good recovery with no residual effects and returned to his job with the Lake County road department. His duties included placement and removal of signs, waste disposal, and loading and delivery of tires. On the evening of February 16, 1977, he was hospitalized and was found to have suffered a heart attack; he died on March 11, 1977, as a result of that attack.

In order to establish a compensable heart case, claimant must establish legal and medical causation. *Coday v. Willamette Tug & Barge*, 250 Or 39, 440 P2d 224 (1968). Both are questions of fact. *Foley v. SAIF*, 29 Or App 151, 562 P2d 593 (1977). The issue of legal causation—whether decedent sustained work-related exertion while performing his usual duties for the road department—turns largely on the credibility of the widow and the fellow employee. No one witnessed the accident.

The widow testified that when she returned home on February 16 at approximately 5:45 p.m., she found her husband in pain and grayish in color. He told her that he had been working alone near Silver Lake and

that he was instructed by radio to bring in some truck tires. As he was loading the tires into his truck, one of them got away. When he chased it, he felt something tear loose in his chest. Decedent refused to see a doctor that evening. Instead he took some nitroglycerin pills to relieve the chest pain and went to bed. He developed trouble breathing, and his wife took him to the hospital.

Mr. Albertson, the fellow employee, testified that he had met decedent at a coffee shop in Lakeview around 5 p.m. on the 16th. His testimony closely corroborated that of the widow. Decedent was complaining of severe chest pains and told Mr. Albertson that when he was on his way home he had been instructed to pick up some truck tires; he tried to load them, but was unable to do so. At that point he felt like he tore something loose in his chest.

The referee found their testimony sufficient to establish legal causation:

"The outcome depends greatly on the the credibility of the widow and Mr. Albertson. Their testimony of decedent's statements about loading tires is clearly hearsay, but hearsay is not inadmissible in workers' compensation proceedings. Since the alleged incident occurred while decedent was alone there is a compelling need for such testimony in this case. Also, decedent's statements were made under circumstances which do not suggest untrustworthiness. A compensation claim need not be proved beyond any reasonable doubt. After hearing and observing the widow and Mr. Albertson I find that they are credible witnesses. Considering the positive, detailed nature of their testimony, it is either true or the conscious product of false swearing and I do not believe it is the latter."

There is no evidence that conflicts with the account of the tire-loading incident. Two other employees of the Lake County road department testified that they saw decedent at View Point Pit around 1:30 p.m. when they helped him load a tire into a truck. Decedent's diary

also related his meeting those employees on the 16th.[1]
His diary entry for the 16th was as follows:

> "Went to Bunkhouse Silver Lk. Took tires up for
> dump trucks. Gased [*sic*] up and headed for Ft. Rock
> to put up road number signs. Put signs up on 512 A-B.
> Went to Xmas Valley and told Dean what Gerald
> said. Picked up a flat tire at pit, put up road number
> signs on 5140 & came home. Got to town 4:10."

Neither the diary nor the testimony of the two
employees refer to the particular tire-loading incident
referred to by the widow and Mr. Albertson. The
referee concluded, and we agree, that the testimony of
the two employees relates to a different segment of
decedent's day and does not therefore necessarily con-
flict with the hearsay version of events:

> "Defendant's witnesses testified regarding the
> loading of one tire into the pickup on the day in
> question when two men besides decedent were pre-
> sent. That particular tire loading incident occurred
> very early in the afternoon and was obviously not the
> same tire loading incident referred to by the widow
> and Albertson which occurred just before decedent
> drove home and at a time decedent was alone."

The absence of a diary entry as noted by the Board in
denying compensability does not render the happening
of the claimed fatal incident incredible.

In our review *de novo* we defer to the opinion of the
referee who had the opportunity to see and hear the
witnesses and to judge their credibility. *Brenner v.
Industrial Indemnity Co.*, 30 Or App 69, 566 P2d 530
(1977). Review of the record, coupled with the weight
we give to the referee's evaluation of credibility, leads
us to the conclusion that the claimant did establish
legal causation by a preponderance of evidence.

---

[1] Decedent's diary entry for the 16th conflicts with the testimony of the
two employees. The diary refers to the meeting at Christmas Valley, while
the employees referred to View Point Pit which is approximately eight
miles east of Christmas Valley.

That then leaves the question of medical causation, which as a question of fact must be established by evidence from medical experts. *Foley v. SAIF, supra.* Although there was conflict in the medical testimony, only one doctor had been furnished with all the evidence concerning decedent's work activities of February 16.

Dr. Griswold, a specialist in cardiology, testified that the exertion in lifting the heavy tires materially contributed to the heart attack. He was of the opinion that that work activity as described by the widow and Mr. Albertson was to a high degree of probability the precipitating cause of decedent's heart attack. Dr. Hawn found no connection between decedent's work activities and the fatal attack; however, he was not provided with all the information in the record. He was only given the records of the initial history and physical examination at the hospital. The hospital admission records indicate that on the previous day— the 15th—decedent had been loading some tires on the job and had had no difficulty in completing the task. The records also indicate that at 2 a.m. of the 16th (the morning before the incident), he awoke with severe pains, for which he took nitroglycerin pills, and the pain subsided. The hospital records do not mention decedent's later work activities on February 16, and Dr. Hawn was not provided with evidence of decedent's activities on the 16th. Therefore, he did not know of any difficulty decedent had had in lifting the tires, the shortness of breath, and the chest pains he encountered during the incident.

We conclude that the claimant established the compensability of the claim by a preponderance of the evidence.

Reversed.