Argued and submitted September 23, reversed and remanded to the Board with instructions that the claim be accepted and for further proceedings consistent with this opinion November 2, 1981

In the Matter of the Compensation
of Wayne R. Batdorf, Claimant.

BATDORF,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(79-05894, CA A20932)

635 P2d 396

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Claimant appeals a determination by the Workers' Compensation Board, affirming the referee's order, that an acute myocardial infarction (heart attack) was not compensably related to his employment. On *de novo* review, we reverse.

■■   Claimant must establish both legal and medical causation in order to prove a compensable heart attack. *Coday v. Willamette Tug and Barge,* 250 Or 39, 49, 440 P2d 224 (1968); *Foley v. SAIF,* 29 Or App 151, 156, 562 P2d 593 (1977). In *Williams v. Burns Int'l Security,* 36 Or App 769, 778, 585 P2d 734 (1978), we noted that the cases have exhibited "confusion in determining what is legal and medical causation in heart cases." *See also,* Skelton, *Workmen's Compensation in Oregon,* 12 Will L J 1, 26 (1975) (*Conday's* legal causation test termed "nebulous"). In *Coday's* language, the question of legal causation is whether there is substantial evidence that claimant exerted himself in carrying out his job, a question of fact, but the exertion need not involve unusual stress. *Riutta v. Mayflower Farms, Inc.,* 19 Or App 278, 281, 527 P2d 424 (1974), *rev den* (1975).

■■   As we interpreted medical causation in *Foley v. SAIF, supra,* the question is "whether the exertion *connected with [claimant's] employment* was a material contributing factor to [the] heart attack" (emphasis supplied), a fact question, the resolution of which requires proof by expert evidence. 29 Or App at 155-56. The two tests overlap considerably, the salient difference seeming to be that medical causation requires expert evidence. We understand *Coday* to require, first, a showing of "work-connected"[1] exertion; and, second, expert medical evidence to the effect that such exertion was, within the range of reasonable medical probability, a precipitating factor of the heart attack. Both requirements were satisfied here.

Claimant, 46 years old at the time of the hearing, was employed as a water truck driver in 1978. He exhibited

---

[1] *See Rogers v. SAIF,* 289 Or 633, 643, 616 P2d 485 (1980) (unitary "work-connection" approach adopted in lieu of mechanistic two-stage analysis "arising out of and in the course of employment").

several cardiac risk characteristics: a diabetic, 5 feet 11 inches tall weighing 240 pounds, and is a cigarette smoker with a family history of heart disease. On May 22, 1978, claimant drove to work at 3 a.m. in a water truck and noticed his "Adam's apple" (referring to his larynx) was aching. At the job site, by a stream near Klamath Falls, claimant removed a 30 to 40 foot hose from the truck, took it 15 to 20 feet down a 45 degree bank to the surface of the stream, stuck the hose in the water, climbed back up and activated the truck's pump to fill the tank. After the truck was full, claimant climbed down, retrieved the hose, placed it in the truck and proceeded to drive the truck while watering the roads. He filled the truck twice.

During the active segments of the first filling operation, claimant's larynx ached and he experienced aching in his arms. Those symptoms subsided when he was resting or driving the truck. During the second filling operation, claimant experienced increased discomfort in the form of larynx and arm pain, chest pain and breathing difficulties. His chest and larynx continued to ache, even while he was resting or driving. Claimant finally returned to the job site, where he told a fellow worker that something was "wrong." An ambulance was called, and claimant was eventually taken to the closest hospital. There it was determined, at about mid-day, that he had experienced or was experiencing an acute anterior myocardial infarction that began sometime within the preceding three or four hours.

■ There is no indication that claimant had engaged in any particular exertion after he reported back to his job site; there is no evidence contradicting claimant's account of events leading up to his hospitalization. *See Mawhinney v. SAIF,* 43 Or App 819, 822, 604 P2d 430 (1979) (no evidence conflicting with claimant's account of tire-loading prior to heart attack). We find claimant's account of events more probable than not.[2] We conclude the heart attack

---

[2] The Board in its opinion characterizes the hospital admission records as documenting that claimant said his heart attack occurred the night before admission. The records show that claimant on admission described the symptoms of a burning pain in his throat as starting "last PM." We do not consider that statement inconsistent with claimant's account of events, since claimant appears to have related that the aching larynx was already present when he reported to work, which was the preceding night, albeit 3 a.m.

probably occurred during the course of, or followed soon after, claimant's normal and usual work activity. It follows that legal causation has been shown.

Three expert opinions on medical causation were given in this case. Dr. Howard, an internist who treated claimant in the hospital, expressed the opinion by letter that claimant's job, described to him only as being that of a truck driver, was probably not a material contributing factor to claimant's heart attack, given his risk profile. Dr. Matthews, a cardiologist who had treated claimant after his release from the hospital and who had been specifically informed of the work activities engaged in by claimant on the day in question, concluded that there was a reasonable medical probability that the physical stress performed by claimant on the morning of the infarction was a material contributing factor to the onset of the acute myocardial infraction.

Dr. Kloster, the chief of the cardiology department at the University of Oregon Health Sciences Center, testified at length in his deposition on the basis of the hospital records and hypothetical facts recited to him. In the course of his deposition, Dr. Kloster said it was impossible to know exactly when the infarction started. He admitted a *possibility* that the aching larynx might have signalled the actual onset of the infarction and that the effect of the exertion may have been only to make the infarction larger than it otherwise might have been. But he noted that after claimant ceased working, he was short of breath and was observed by a co-worker to be "pale or gray or sweaty,"[3] a symptom which, the physician stated, "correlate[s] very well to the onset of infarction" and is "frequently most helpful in eliciting when a major cardiac event started." It was his opinion that the aching larynx and chest pain were more consistent with ischemia (constricted flow of blood to parts of the heart) and angina pectoris (heart-related chest pain), than with "the severe symptoms that are associated with infarction." He concluded that in all medical

---

[3] This fact appears in the deposition of Dr. Kloster. The insurer has not made any objection to the deposition testimony with respect to this fact, and we assume that if objected to it could have been proved at the hearing.

probability the "ischemic episode" was aggravated by claimant's work-connected exertion to such an extent that a myocardial infarction developed in the last hours that claimant worked.

■ The referee discredited the opinion of Dr. Matthews because the doctor, although informed of the filling activities, was not given precise details, *e.g.,* the grade of the slope down to the stream, or the length of the hose. The Board discredited Dr. Kloster's opinion because he was told the weight of the water hose exerted approximately 100 to 150 pounds drag rather than that the hose weighed approximately 50 pounds (estimated by the employer), or 70 to 80 pounds (estimated by the claimant).[4] We note that drag is not equivalent to weight. Such relatively minor discrepancies in terms of the stress facto do not, in our view, invalidate the medical opinions of Dr. Matthews or Dr. Kloster. There is nothing to indicate that their opinions would have been changed by that adjustment to the assumed facts. Furthermore, there is no *better-informed* medical opinion in the record which contradicts either Dr. Kloster or Dr. Matthews. We find that the record contains sufficient medical evidence to establish that claimant's exertion was a precititating factor in the onset of the myocardial infarction.

In *Summit v. Weyerhaeuser Company,* 25 Or App 851, 856, 551 P2d 490, *rev den* (1976), the activity of climbing stairs was found to be normal and usual exertion in performance of the job. That activity was found to satisfy the requirement of medical causation on the basis of medical evidence that if claimant had not been exerting himself at work, "his condition *might* have stabilized and he *may* not have required hospitalization and surgery." (Emphasis supplied.) 25 Or App at 856. That holding reflects the rule that claimant's burden of proof on medical issues (as on all others) is by a preponderance of the evidence; medical certainty is not required. *Hutcheson v. Weyerhaeuser,* 288 Or 51, 55-56, 602 P2d 268 (1979).

If climbing stairs is enough to precipitate a heart attack, it would seem that the act of propelling a 240 pound

---

[4] A fellow worker thought the hose weighed about 20 pounds.

human frame up a steep embankment could suffice, quite apart from the exact length or weight of the hose or the precise grade of the embankment. Although every heart attack case is, to some extent, medically different in its details and circumstances, we find it significant that the Supreme Court has held that the movement of a claimant's arm in engaging a hand lever clutch was enough to constitute a basis for the conclusion that the exertion was a material factor in causing a heart attack. *Olson v. State Ind. Acc. Com.*, 222 Or 407, 415-16, 352 P2d 1096 (1960). The medical evidence here establishes to our satisfaction that claimant's work-connected exertion was a precipitating factor in the onset of his myocardial infarction.

Because we find a compensable injury, this case is reversed and remanded to the Board with instructions that the claim be accepted and for further proceedings consistent with this opinion.