Argued and submitted May 10, reversed and remanded with instructions June 9, reconsideration denied July 8, petition for review allowed August 3, 1982 (293 Or 456)

In the Matter of the Compensation of
Orville A. Bales, Claimant.

BALES,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(No. 80-03397, CA A23327)

646 P2d 83

Benton Flaxel, North Bend, argued the cause for petitioner. With him on the brief was Flaxel, Todd & Nylander, North Bend.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Claimant appeals from a determination by the Workers' Compensation Board (Board) affirming the referee's order denying this claim for benefits for a myocardial infarction he sustained on March 3, 1980. Finding the heart attack to be compensable, we reverse and remand.

At the time of the incident, claimant was 55 years old. He was employed by Coos Head Timber Company. For most of the previous six years claimant's job as "planer feeder" had entailed relatively light work in a seated position turning over pieces of lumber. Two weeks before the incident, claimant was transferred to a position on the "green chain" that involved removing from a conveyor belt green lumber up to 2 inches by 6 inches by 16 feet in dimension. That job was more strenuous. Claimant testified that on the new job he was physically exhausted by the end of the day. On the morning in question, claimant's shift began at 7 a.m. Between 8:15 and 8:30 a.m., he began to experience pain in his chest, nausea and general fatigue. He left work at 9 a.m. and sought medical attention from a physician in North Bend, who administered an EKG test. The results of that test suggested an early anterior infarction. Claimant was admitted that day to the intensive care unit of the local hospital. Enzyme studies and further EKG tests revealed development of an anterior-lateral myocardial infarction. Claimant was released from the hospital on March 13, 1980.

Subsequently, a cardiac specialist in Eugene, to whom claimant had been referred, performed a coronary angiogram, which revealed several cardiac abnormalities, including constriction of one branch of the coronary arteries and total occlusion of one artery. On the basis of claimant's history, the hospital data and the specialist's findings, the physician in North Bend stated in a letter to SAIF that claimant's work activity of pulling on the green chain was a material contributing cause of the myocardial infarction. In response to a written inquiry from SAIF, however, the Eugene specialist responded that the heart attack was related to a natural disease process and was not related, directly or indirectly, to claimant's work activity.

Claimant's medical file was then sent by claimant's attorney to a second cardiac specialist at the University of Oregon Health Sciences Center in Portland, with a brief explanation of claimant's work activity during the two weeks preceding the incident. That specialist, concluding that claimant's work activity was a substantial and material factor in contributing to development of the myocardial infarction, stated in part:

> "I base this [conclusion] upon the fact that [claimant,] who was apparently small in stature according to your letter, was doing a different job on the morning in question and was involved in pulling heavy timbers off the green chain."

The Eugene specialist testified by deposition that in the vast majority of heart attack cases, exertion or stress, physical or otherwise, are not factors, indirectly or directly, and that this was true here. He stated in relevant part:

> "I don't believe that exertion causes heart attacks. I don't believe there is any evidence exertion or emotional stress causes heart attacks.

> "I don't believe there is anything in the literature in the world that supports that. * * *

> "* * * * *

> "* * * It's one thing that we do have, are a number of statistics that show that people have heart attacks at all hours of the day and night and has no relation to what they're doing.

> "* * * * *

> "In fact, heart attacks don't come about as a result of physical or emotional stress."

Although elsewhere in his deposition, the Eugene specialist was careful to note that he never says "never," he made no secret of the fact that he is of the school of medical thought holding that exertion or stress does not, in general, cause heart attacks, a point of view for which he claimed a 75 percent following among physicians in Oregon.

The referee found the North Bend physician's opinion of compensability to be conclusory, and the Portland specialist's opinion of compensability to be based on

the erroneous belief that claimant was pulling "heavy timbers." The record does support the conclusion that, on the day in question at least, the largest pieces of lumber, known in the trade as "heavy timbers," were being pulled from the other side of the green chain. The referee noted that, although the Eugene specialist's explanation "appeared at times inconsistent, and somewhat questionable," it had an "apparent rationale" that was "in keeping with the majority of his colleagues in the medical community." The referee concluded that there was a failure of proof of causation, and affirmed denial of the claim. The Board adopted the opinion of the referee.

We do not agree that there was a failure of proof of causation here. Two physicians, one a cardiac specialist, were of the opinion that claimant's work exertion contributed materially to his heart attack. Their opinions, in the form of letters from one to one and one half pages in length, are not conclusory merely because they do not address the stress versus natural progression issue disputed amongst cardiologists. Moreover, we do not believe that the Portland specialist employed the term "heavy timbers" to refer only to certain large pieces of lumber on the green chain. The letter to that specialist used the term without limiting its definition. Furthermore, extremely minor exertion, such as pulling a lever with the hand, has been held to be sufficient to support a medical conclusion that exertion was a material factor in causing heart attack. *Olson v. State Ind. Acc. Com.,* 222 Or 407, 415-16, 352 P2d 1096 (1960); *Batdorf v. SAIF,* 54 Or App 496, 502, 635 P2d 396 (1981).

The Supreme Court has rejected the school of thought to which the Eugene specialist subscribes. In *Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969), the court reversed the granting of a judgment notwithstanding the verdict of compensability found by the jury, stating in relevant part:

"The question of the sufficiency of evidence to warrant submission of a case to the jury is difficult enough in any area of the law. In the heart attack cases the difficulties are multiplied because the medical authorities themselves are not agreed upon the basic question of whether stress of any kind can be a precipitating factor in causing a heart attack. We are not certain which of these conflicting theses is

right but since we must proceed upon the basis of a uniform rule a choice must be made. We have chosen to reject the view that exertion or stress can never be a causative factor in these cases." 253 Or at 402.

Here, the Eugene specialist's opinion appears to be based primarily on the view that stress can never be a causative factor, a view expressly rejected by the court in *Clayton.* For that reason, we accord it less weight. On balance, we conclude that the preponderance of the medical evidence establishes that claimant's work-connected exertion was a precipitating factor in the onset of claimant's myocardial infarction. *See Batdorf v. SAIF, supra.*

Reversed and remanded with instructions that the claim be accepted as compensable.