In the Matter of the Compensation
Earl L. Harris, Claimant.

HARRIS,
*Petitioner,*

*v.*

FARMERS' CO-OP CREAMERY,
*Respondent.*

(WCB No. 80-2710, CA A20206)

632 P2d 1299

Michael B. Dye, Salem, argued the cause and filed the brief for petitioner.

Katherine H. O'Neil, Portland, argued the cause for respondent. On the brief were Elizabeth K. Reeve, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

**ROBERTS, J.**

The issue in this workers' compensation case is whether claimant's heart attack, which occurred while he was driving a company car during his employment as a route supervisor for a milk distribution company, was job-related. The referee found that it was. The Workers' Compensation Board (Board) reversed. On *de novo* review, ORS 656.298(6), we find that the preponderance of the evidence supports legal and medical causation and we reverse.

The incident at issue occurred on December 28, 1979, after claimant had driven from McMinnville to Milwaukie to deliver a 30-pound crate of whipping cream. On his return trip, he suffered pains deep in his chest and began to sweat so heavily that water dripped from his hair and his clothing was soaked. He stopped in Sherwood, telephoned his office and asked them to send someone to get him. When no one showed up, he began to drive again, but pulled off the road again near Newberg. He was picked up and taken to the Newberg Hospital by his immediate supervisor. He was diagnosed as having suffered an acute myocardial infarction. The treating physician's report states that there was no previous history of exertional chest pain or "definite heart disease."[1] Claimant was transferred to St. Vincent's Hospital in Portland for further care by a cardiologist, Dr. Sutherland. On his initial examination of claimant, Dr. Sutherland confirmed that he had suffered an acute myocardial infarction, with coronary artery disease. Claimant was treated at St. Vincent's for eleven days and discharged. Subsequently, he suffered a recurrence of symptoms and was hospitalized in McMinnville for nine days. He was readmitted to St. Vincent's on February 11, 1980, for angiography. At that time, Dr. Sutherland diagnosed coronary artery disease with a recent myocardial infarction. A coronary bypass operation was performed. The final diagnosis by Dr. Sutherland was coronary artery disease, with recent myocardial infarction, angina pectoris and congestive heart failure. In a letter to employer's

---

[1] Claimant testified at the hearing that he had suffered chest pains approximately a year before this incident, and had been given an electrocardiogram and was found not be suffering from heart problems, but from "nerves."

insurer on March 6, 1980, Dr. Sutherland stated: "From what I know at the present time I do not believe that Mr. Harris' work was the etiology of his coronary artery disease or myocardial infarction." Based on this letter, the insurer denied the claim.

■ To recover compensation for an on-the-job heart attack, claimant must show, first, that he exerted himself in carrying out his job and, second, that the exertion was a material contributing factor in producing the heart attack. The first is a question of legal causation; the second determines the issue of medical causation. *Coday v. Willamette Tug & Barge Co.,* 250 Or 39, 440 P2d 224 (1968). The proof is the same whether the exertion is physical or emotional, *see Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969), and claimant must prove both legal and medical causation by a preponderance of the evidence. *Carter v. Crown Zellerbach Corp.,* 52 Or App 215, 627 P2d 1300 (1981). In cases where the claim is based on physical exertion, a showing of unusual exertion is not required. The usual exertion of a claimant's regular job is sufficient to establish legal causation. *Coday v. Willamette Tug & Barge Co., supra; Carter v. Crown Zellerbach Corp., supra; Riutta v. Mayflower Farms, Inc.,* 19 Or App 278, 527 P2d 424 (1974); *Anderson v. SAIF,* 5 Or App 580, 485 P2d 1236 (1975). Legal causation in cases of emotional stress can likewise be established by a showing of chronic emotional stress or an episode of acute stress. *Schwehn v. SAIF,* 17 Or App 50, 520 P2d 467 (1974).

Both the referee and the Board agreed that claimant had established legal causation. The record clearly shows claimant was, in the days immediately preceding his heart attack, subject to physical stress, as well as substantial emotional stress. Claimant testified that, while his normal duties were basically management and sales, during holiday seasons[2] his job responsibility changed to include product loading and deliveries. He said that on December 24 he had worked a 15 and one-half or 16 hour day, hauling dairy products to drivers and to stores. He testified

---

[2] Claimant stated these holiday periods were Fourth of July, Labor Day, Thanksgiving, Christmas, New Years and Memorial Day.

he was "extremely tired," "exhausted" at the end of the day and looking forward to Christmas Day and rest. On Christmas, however, he was called out on an emergency to deliver milk to a store in Salem and worked about half a day. This precipitated a family quarrel, which he testified created tension in the home all evening. Claimant returned to work the next morning at about 6:30 a.m. and worked 14 or 15 hours. On that day he delivered milk to various stores and picked up empty cases. He testified that he went to work tired and went home tired.

The next day, December 27, claimant went to work at 4 a.m. and drove a tractor and 35-foot trailer of products from McMinnville to Eugene. Upon his return to McMinnville he was called in by his immediate supervisor and told he had to discipline a driver about whom the firm had received complaints.[3] Claimant testified disciplining employes caused him a "a lot of anxiety." He then had to hand load a truck and deliver products to Lincoln City and Newport. He loaded and unloaded 50 to 60 30-pound cases of milk and returned home at 10 p.m., after completing an 18-hour day. He was, he said, "exhausted." He spent a restless night and when he woke up he said he "felt like I'd worked all night." He was bothered and upset about the upcoming confrontation with the driver. He went to work at 6:30 the morning of December 28 "uptight," "upset" and "nervous." That morning, when he had to deliver the 30-pound crate of whipping cream to Milwaukie, claimant testified "I was exhausted, and it was — just felt like almost more than I could handle." It was on claimant's return from Milwaukie to McMinnville, where he was to meet with the errant driver, that he suffered the heart attack.

The facts thus amply demonstrate that claimant was suffering from a high degree of emotional stress: he was subject to "a lot of anxiety" over the disciplining of the driver, whom he himself had hired from another employer and whom he had previously felt to be an exceptional worker; his work hours were the cause of confrontations with his wife and tensions at home; and he was also

---

[3] Such discipline, according to applicable union procedures, involves counseling of the employe and a written reprimand.

affected by the additional stress of his holiday work schedule. The holiday schedule increased the physical stress to which claimant was subject as well. During the four days preceding his heart attack, claimant, whose normal duties did not include loading of trucks, did a significant amount of loading. It appears that such work was not comparable to his normal physical exertion, though it may have been his normal "holiday" schedule. In any event, as we have noted, normal job stress, whether physical or emotional, is sufficient to establish legal causation.

The question remaining is whether claimant established medical causation. This, of course, is a matter which must be established by medical experts. Dr. Sutherland, the treating physician, said that to his knowledge claimant's work was not a causative factor, but Dr. Sutherland's knowledge was based only on the St. Vincent's medical reports and a written statement of an interview conducted with claimant by a claims investigator for the insurer. There were reports from two other physicians in evidence. Dr. Griswold, a professor of medicine at the University of Oregon Medical School, a certified internist and former head of the University of Oregon Medical School's Division of Cardiovascular-Renal Diseases, never saw the claimant but stated in a letter to employer's insurer that after reviewing the medical records from St. Vincent's and the Newberg hospitals, Dr. Sutherland's letter of March 6 and the insurer's taped interview, "I cannot state that there was no relationship to [sic] his work activity and his myocardial infarction. On the other hand, * * * it can only be defined in the realm of possibility and not reasonable medical probability that his work activity was a substantial material contributing factor to his heart attack."

At the hearing before the referee, Dr. Rosencrans, a board-certified internist on the staff of Salem and Polk Community hospitals, testified. He also had not examined the patient, but had reviewed Dr. Griswold's report and the documents upon which it relied. In addition, Dr. Rosencrans, alone of the three physicians, had the opportunity to include in his analysis claimant's account of the significant anxiety he felt over the upcoming disciplining of the driver, his exhaustion for several days preceding the incident, the

family tension over his working hours, the heavy loading work done on the day preceding the attack and his fitful sleep that night. When Dr. Rosencrans was posed a hypothetical question synopsizing claimant's testimony at the hearing, he responded in this manner:

"[Claimant's attorney]: Now, Doctor, based upon a reasonable, medical probability, do you have an opinion as to whether or not the man's work activities and the stress that they produced on him — the working hours and also the situation, as far as firing this gentleman and the pressures of his job, as far as keeping products on the table — was a major, contributing factor to his myocardial infarction?

"Dr. Rosencrans: Yes, I agree. It would be a major, contributing factor. I think the man was overworked. This was an excessive load sort of thing I would not recommend to any patient that had coronary artery disease, and he did. He did a lot of heavy lifting, and he was under this anxiety, which works synergistically, which increased the stress upon him, so I think it was a major, contributing factor and I think that — that would be the most likely — you know — if you want to theorize about why he had the heart attack at that particular time, that would be my theory."

The Board found claimant had failed to establish medical causation and that the referee erred in relying on the opinion of Dr. Rosencrans, because he was not a board-certified cardiologist and had not examined the claimant. The Board found the opinion of Dr. Sutherland most persuasive, because he was the treating physician, and stated "Dr. Sutherland did not believe the claimant's work was the cause of his coronary artery disease or of his myocardial infarction." We disagree. None of the three doctors said claimant's work could not be the medical cause of his heart attack, and no other equally plausible theory was advanced. *Compare Raines v. Hines Lbr Co.,* 36 Or App 715, 585 P2d 721 (1978). Dr. Sutherland said only that based on what he knew on March 6, he did not believe work was the cause of claimant's heart attack. He apparently was not aware of all of the stress to which claimant had been exposed. Dr. Griswold, whom the Board said was "also a well-known cardiologist," based his opinion on the same inadequate information and said that he could *not* say that there was no relationship between claimant's work and his

heart attack. The only physician to consider all of claimant's testimony as to physical and emotional stress was Dr. Rosencrans, and he found a clear causal relation as a medical probability between claimant's work and his heart attack.[4]

While the opinion of the treating physician is generally given great credence because of that doctor's opportunity to see and treat the patient during the initial phases of disability, this is not a case in which such deference is appropriate. We said in *Hammons v. Perini Corp.,* 43 Or App 299, 602 P2d 1094 (1979), a case involving disease resulting from a collapsed lung, that where a case involves expert *analysis* rather than expert *observation,* there is no need to give special credit to the opinion of treating physicians to the extent of discrediting evidence by consulting physicians. As in the case of a collapsed lung, in determining the etiology of a heart attack, "[t]here is nothing about the nature of the treatment which would enhance one's diagnostic abilities by virtue of having examined and treated the claimant." *Hammons v. Perin Corp., supra,* 43 Or App at 301.

■    We find Dr. Rosencrans' testimony, because it was based on more complete information, to be the most persuasive of that offered by the three physicians. The testimony of the other two doctors does not refute Dr. Rosencrans' view that claimant's work activity was a causative factor in his heart attack. On *de novo* review, we must determine which medical hypothesis is correct. *Coday v. Willamette Tug & Barge, supra,* 250 Or at 49. We find by a preponderance of the evidence that the physical and mental stress claimant was suffering were within the realm of medical probability as material contributing factors in his heart

---

[4] Both the Board and the employer, on appeal, expend a significant effort in "credential squabbling" over Dr. Rosencrans and Dr. Griswold. Though the Board found Dr. Griswold to be a "well-known cardiologist" and Dr. Rosencrans not to be board certified, the record before us shows only that both are certified by the American Board of Internal Medicine. Dr. Sutherland's resume indicates that he is also certified in cardiovascular disease by that Board. In any event, Dr. Rosencrans, who is at least a practicing cardiologist, was formerly a resident in psychiatry; thus his added expertise in considering the impact of emotional stress upon the body's physical system may give his opinion added credibility.

attack. *Coday v. Willamette Tug & Barge, supra.; Carter v. Crown Zellerbach Corp., supra.*

Reversed.