Argued and submitted January 9, reversed and remanded with instructions February 22, 1984

In the Matter of the Compensation of
Robert Stedman, Claimant.

STEDMAN,
*Petitioner,*

*v.*

GARRETT FREIGHTLINES,
*Respondent.*

(81-01763; CA A28481)

677 P2d 51

Albert J. Bannon, Portland, argued the cause for petitioner. With him on the brief was Ramona G. Rosa, Portland.

Jerald P. Keene, Portland, argued the cause for respondent. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant appeals a Workers' Compensation Board order affirming the referee's partial denial of compensability. The sole issue is whether claimant established by a preponderance of the evidence that his paralyzed right hemidiaphragm is causally connected to his compensable neck and shoulder injury. We review *de novo,* ORS 656.298(6), and reverse.

Claimant drives trucks for respondent. On October 8, 1980, he injured his shoulder and neck while trying to free a jammed "fifth wheel" pin to disconnect a trailer. On October 13, he saw Dr. Noall, an orthopedic surgeon, who diagnosed a muscle and ligament sprain of the cervical and right shoulder girdles. He recommended physical therapy and advised claimant to avoid heavy lifting. Claimant testified that he avoided such activity until he went crabbing on October 18. While pulling in a crab ring, he experienced a severe shortness of breath. He saw Dr. Wheeler, who referred him to Dr. Ironside, a pulmonary specialist. Dr. Ironside determined that claimant had a paralyzed right hemidiaphragm caused by phrenic nerve paralysis.

Claimant filed a claim for both the neck and shoulder injury and the paralyzed diaphragm. The neck and shoulder injury was accepted, but the diaphragm injury was denied.

■    The insurance carrier sent claimant to two pulmonary specialists, Drs. Lawyer and Vervloet. Both concurred with Dr. Ironside's diagnosis of paralysis of the right hemidiaphragm, secondary to a nonfunctional phrenic nerve. Although the doctors agreed on claimant's condition, they disagreed whether the neck and shoulder injury caused the damage to the phrenic nerve.

In Dr. Ironside's opinion, the exertion in pulling the jammed pin caused indirect trauma to the phrenic nerve. He identified three possible causes of the nerve damage, the most common being malignancy and inflammation. He tested claimant for cancer and infection without finding evidence of either. The third possibility was a traumatic pulling of the nerve. He concluded that the elimination of both malignancy and inflammation as possible causes and the short time interval between the stretching injury, shortness of breath

and discovery of the paralyzed diaphragm made it probable that the exertion and injury of October 8 caused a trauma to the phrenic nerve.

The other doctors concluded that, while the stretching injury possibly caused the phrenic nerve trauma, it was not "medically probable." Dr. Lawyer stated that the most likely cause of the nerve damage was a viral infection, although he admitted that there was no indication of an infection. Dr. Vervloet agreed with Dr. Lawyer that there was a possibility that the injury caused damage to the phrenic nerve. He reported a case in the medical literature in which a man had experienced similar damage attributed to exertion on an exercise wheel. However, he assigned the likely cause of the nerve damage as "idiopathic" or unknown.[1]

The referee relied on the opinions of Dr. Lawyer and Dr. Vervloet in determining that claimant had failed to establish "by a medical probability a connection between his frozen hemidiaphragm and his neck and shoulder injury." He determined that Dr. Ironside's opinion was not entitled to more weight by virtue of the facts that he saw claimant earlier and closer to the October injury or that he was the treating physician, because "there is nothing in the nature of treating claimant's problem near the time of injury which would enhance Dr. Ironside's diagnostic abilities." *See Hammons v. Perini Corp.,* 43 Or App 299, 602 P2d 1094 (1979). We disagree. Treating claimant closer to the time of the injury permitted Dr. Ironside to exclude the other possible causes of phrenic nerve paralysis and enhanced his ability to diagnose accurately.

■ All of the doctors explained that it is difficult to diagnose the cause of phrenic nerve paralysis, because the nerve is well protected deep within the body and a stretching injury itself is not visible. In the light of the difficulty in diagnosing the cause of phrenic nerve paralysis from indirect trauma with medical certainty, we conclude that claimant has

---

[1] Drs. Lawyer and Vervloet were both particularly concerned with the lack of reported cases similar to claimant's in the medical literature and assessed the medical probability of such a cause in claimant's case based on the dearth of such reported cases. Statistical evidence that a causal connection is rare does not defeat the claim if an expert establishes the relationship in a particular case. *See Lucke v. Compensation Dept.,* 254 Or 439, 461 P2d 269 (1969).

met his burden of proof to show that his paralyzed hemidiaphragm was medically caused by the initial on-the-job injury. We give more weight to the treating doctor's diagnosis, because he saw claimant shortly after the neck and shoulder injury, tested him for viral infection and malignancy and thereby ruled out the more common causes of phrenic nerve paralysis. Neither Dr. Lawyer nor Dr. Vervloet contradicted Dr. Ironside's opinion but, instead, found that the relationship between the stretching injury and phrenic nerve paralysis was medically "possible" rather than "probable." *See Harris v. Farmers' Co-op Creamery,* 53 Or App 618, 632 P2d 1299 (1981). The exclusion of other causes and the close proximity in time between the on-the-job strain and the first onset of breathlessness during exertion persuades us that there is a medical probability that the compensable strain to the neck and shoulder caused trauma to the phrenic nerve, resulting in the paralysis of the right hemidiaphragm.

Reversed and remanded with instructions to order acceptance of the claim.