Argued and submitted April 11, reversed and remanded with instructions July 25, 1984

In the Matter of the Compensation
of Jimmy F. Adams, Claimant.
**ADAMS,**
*Petitioner,*

*v.*

**GILBERT TOW SERVICE et al,**
*Respondents.*

(81-04335; CA A29201)

684 P2d 1254

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief were David A. Hytowitz and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Alan M. Muir, Portland, argued the cause for respondents. With him on the brief were William H. Replogle and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant appeals an order of the Workers' Compensation Board that upheld the referee's determination that claimant's myocardial infarction is not a compensable injury. We reverse.

Claimant, age 49, was a tow truck driver for employer for approximately three years. He worked six days a week from 8 a.m. to 6 p.m. and every other Sunday. He was also required regularly to respond to night calls. About midday on March 25, 1981, he received a call to tow a wrecked truck from the I-5 freeway in Portland. Under his employer's contract with the police, he had to reach the vehicle within 30 minutes of the call. He was very apprehensive about freeway tows because of the heavy, high speed traffic. On several occasions he was nearly hit, and once a fellow employe was nearly killed on a freeway tow. Claimant's fear often disturbed his sleep.

While claimant was driving northward on I-5 to the scene of the wreck, another vehicle struck his tow truck and broke its turn signal and running lights. He began to suffer chest pains and to sweat. His arms felt very tired. Although the pain became worse, claimant went to the scene of the wreck. The police officer at the scene told him to hook the vehicle up and remove it. He was excited and nervous, in part because the officer was not blocking traffic. Claimant let the sling down, crawled under the vehicle's side and hooked up the towing lights. Claimant's chest was hurting and his feet "wouldn't work right."

After leaving the freeway, claimant felt nauseous and stopped his truck on a city street. He got out of the truck and lay down at the side of the road. He then attempted to drive the truck but could not, because his "feet wouldn't work." He radioed his company, got out of the truck and lay down again. A friend saw him and took him to a medical clinic, where a doctor diagnosed a myocardial infarction. Claimant was hospitalized for ten days. He did not return to work.

Claimant suffered from artheriosclerosis and hypertension. He did not regularly take medication prescribed for control of his blood pressure. Two family members had suffered from hypertension. Claimant had smoked cigarettes since age 19, averaging a pack a day. He was smoking half a

pack a day at the time of the infarction. Nine days before, he was treated at a hospital for nausea, headache and light-headedness. The insurer denied his claim, stating that the attack "is not a result of nor arose out of your job and occupation."

 Claimant must establish legal and medical causation by a preponderance of the evidence. *Bush v. SAIF,* 68 Or App 230, 680 P2d 1010 (1984); *Harris v. Farmers' Co-op Creamery,* 53 Or App 618, 632 P2d 1299, *rev den* 291 Or 893 (1981). Claimant does not argue that the stress of his work caused his underlying heart disease but that it caused the myocardial infarction. Legal causation here is clear. Claimant suffered physical and emotional stress in carrying out his job. *See Batdorf v. SAIF,* 54 Or App 496, 635 P2d 396 (1981). The issue is medical causation: whether the stress of claimant's work was, within the range of reasonable medical probability, a material contributing cause of his myocardial infarction.

At the hearing two cardiologists testified. Although neither believed that claimant's cardiovascular disease was caused by his work, they disagreed whether the stress of his work was a material contributing cause of claimant's myocardial infarction. Dr. Wysham, who had examined claimant, stated that acute physical or emotional stress can cause a myocardial infarction in either of two ways. In his opinion, temporary stress can increase blood pressure and pulse rate, leading to insufficient oxygen and to an infarction. Alternatively, in his opinion, stress can increase blood pressure and rupture plaque, which can clog an artery, causing an attack. Dr. Wysham relied in part on a 1977 Special Report of The Committee on Stress, Strain and Heart Disease of the American Heart Association, which concluded:

> "A single isolated episode of stress (physical or emotional) in individuals rendered susceptible because of underlying heart disease, if of sufficient intensity and duration, appears capable of eliciting adverse responses which might trigger or hasten certain cardiac lesions and dysfunctions. These may include angina pectoris, a cardia dysrhythmia, acute congestive failure or possibly myocardial infarction."

Dr. Wysham considered the stress involved in claimant's work on the day of the attack and concluded that it was "a major contributing factor" in the attack.

In Dr. Trelstad's opinion, the myocardial infarction was "basically a random event." In the light of claimant's medical history, his smoking, his family history and his failure to take medication, Dr. Trelstad found it coincidental that the myocardial infarction happened while claimant was at work. He acknowledged that the issue of whether stress can contribute to a myocardial infarction is controversial. He believed, however, that the Special Report's language was a "real hedge." He considered the infarction as not work-related, because the stress on claimant that day was "of very short duration" and it "did not seem as though the pressure on [claimant] at that time was a lot different than he had previously experienced and had no problems with."

The referee found:

"The medical evidence, in my view, is in equipoise. While Dr. Wysham has more experience than Dr. Trelstad and has the additional advantage of having actually examined and spoken to claimant, Dr. Trelstad's opinion appears to be in harmony with the Special Report * * * relied upon by both of these gentlemen in their testimony. Accordingly, I reluctantly conclude that claimant has failed to meet his burden of proof."

We disagree. We find Dr. Wysham's testimony more convincing. Dr. Trelstad acknowledged that he had found stress a material contributing cause of myocardial infarctions in other cases. He thought that here stress was not a contributing cause because of claimant's medical history and habits and because he did not think claimant experienced unusual stress. The evidence shows, however, that claimant, at the time of the infarction, was under severe stress and, while under that stress, was required to perform a dangerous job quickly. There was ample evidence that the stress claimant experienced was not of "very short duration" or common.

We also disagree with the Board that an "equally plausible theory" was that claimant's myocardial infarction was caused by the "natural progression of his pre-existing cardiovascular disease." Given the evidence of events preceding and at the time of claimant's attack, and Dr. Wysham's

testimony, we find it improbable that the myocardial infarction was a random occurrence. The stress of claimant's job was a material contributing cause of the infarction.

Reversed and remanded to the Board with instructions to accept the claim.