Argued and submitted September 16, 1985, reversed; referee's order reinstated
January 8, 1986

In the Matter of the Compensation of
Ronald M. Somers, Claimant.

SOMERS,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(WCB No. 82-11066; CA A33845)

712 P2d 179

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant seeks review of a Workers' Compensation Board order reversing the referee and holding that claimant failed to prove that his myocardial infarction was compensable. On *de novo* review, we reverse.

Claimant is 48 years old. He has practiced law since 1962. In addition, he serves as municipal judge and a bankruptcy trustee. Before June, 1982, he had no known cardiovascular problems. On the morning of June 24, 1982, he was served with a default order in one of his estimated thirteen to fourteen hundred open case files. Investigation disclosed that the default had been taken approximately one hour before claimant had filed an answer in the case. The other attorney did not notify claimant of his intent to seek a default. Claimant became immediately and acutely upset. He had his secretary "throw" his clients out of the office, and he became consumed with the default matter. Several witnesses related that claimant appeared unusually angry. He testified that he was so upset that he could not remember how to move to set aside a default order. He called another attorney for assistance. He felt that he had "completely lost control" of his practice.

That afternoon, claimant succeeded in setting aside the default. After that court appearance, he visited another attorney, who testified that claimant was very upset and under a great deal of stress. Claimant eventually went back to his office, where, except for a short break, he stayed until 1:00 or 2:00 a.m., working through his files to determine whether the attorney who had taken the default was involved in any of his other cases. He did not sleep well that night.

The next morning, claimant spent two or three hours performing his duties as a municipal judge. Later that morning he discovered that the other attorney had "ex parteed" the trial judge regarding his decision to set aside the default order and that the judge had to ask the attorney to leave his office. Claimant described feeling as though he were in a trash compactor which was closing in on him. During the afternoon, he suffered some gastric distress. He took Gaviscon, which gave him no relief. He did not eat during the day.

At about 6:30 p.m., claimant conducted a wedding in

his role as municipal judge. At the reception he ate some food and drank two or more glasses of champagne and talked with a number of friends and clients. On his way home, he stopped to talk with clients that he had "thrown" out of his office the day before. After spending approximately two and one-half hours with them, he arrived home about 11:30 p.m. He immediately went to sleep.

After sleeping for about an hour, he awoke sweating and experiencing severe chest pain, shortness of breath and nausea. He telephoned a doctor and was taken to the hospital, where it was determined that he had suffered the acute myocardial infarction on which the claim is based. SAIF denied the claim. The referee set aside the denial, finding that claimant had proved compensability. The Board reversed.

■■ To establish a compensable heart condition, a claimant must prove that the work activity was both the legal and the medical cause of the condition. *Bush v. SAIF*, 68 Or App 230, 232, 680 P2d 1010 (1984). Legal causation, in cases of emotional stress, can be established by a showing of chronic emotional stress or an episode of acute stress. *Harris v. Farmers' Co-op Creamery*, 53 Or App 618, 621, 632 P2d 1299, *rev den* 291 Or 893 (1981). The medical causation question is whether the stress was, within reasonable medical probability, a material contributing cause of the infarction. *Coday v. Willamette Tug & Barge*, 250 Or 39, 47, 440 P2d 224 (1968); *Adams v. Gilbert Tow Service*, 69 Or App 318, 321, 684 P2d 1254 (1984). Medical causation must be established by medical experts. *Bush v. SAIF, supra,* 68 Or App at 232.

■ The parties agree that legal causation is established. As to medical causation, claimant does not argue that chronic work-related stress caused his underlying atherosclerosis. He instead argues that the acute stress suffered on June 24 and 25 precipitated the infarction. The question becomes whether claimant established by a preponderance of the evidence that the acute stress was a material contributing cause of the infarction. We conclude that he did.

Four doctors agree that claimant was at high risk of developing coronary atherosclerosis because of smoking, elevated serum cholesterol, mild exogenous obesity and a family history of heart disease. Only Dr. Hodge, however, was of the

opinion that the acute stress was a material contributing cause of claimant's myocardial infarction.

■  When there is a dispute between medical experts, we give more weight to those medical opinions which are both well-reasoned and based on complete information. *See Hammons v. Perini Corp.,* 43 Or App 299, 302, 602 P2d 1094 (1979); *Harris v. Farmer's Co-op Creamery, supra,* 53 Or App at 625. We find that only Hodge's opinion meets both criteria and accordingly give his testimony the greatest weight. We give little weight to the opinion of Dr. Lee, because it is conclusory and because it is based on incomplete facts. Lee's letter, in its entirety, states:

> "I received your letter of September 24, 1982 requesting that I review the report of the examination of Mr. Ronald M. Somers by Dr. Wasenmiller. I have reviewed that report.
>
> "It is my opinion that Mr. Somer's work activity was not a significant or material contributing cause of his acute myocardial infarction of June 26, 1982."

Lee fails to explain *why* he believed that the acute stress was not a material contributing cause of claimant's heart attack. Moreover, there is no indication in the record that Lee was fully informed of the facts about June 24 and 25. Dr. Wasenmiller's report, on which Dr. Lee based his opinion, states only:

> "[Claimant] does describe unusual emotional stress occurring two or three days prior to his heart attack, apparently precipitated by a default which had been filed by another attorney practicing in The Dalles, directed against Mr. Somers. Even though this default was later shown to be nonvalid, he states that the emotional trauma during that period of time was significant."

Although Dr. Kloster's report is well-reasoned, he had an incomplete factual basis to evaluate the extent of claimant's stress. He did not interview claimant. His evaluation is on the basis of a series of medical reports. The only reference to claimant's stress which we can find in those reports is the above-quoted passage from Wasenmiller's letter. On the basis of the letter's description of claimant's stress, Kloster concluded:

> "There is no indication that there was any work-related

stress, either physical or emotional, during the hours immediately preceding [*sic*] the onset of the symptoms of his myocardial infarction. Accordingly, I can find no evidence that his work activity was a material factor provoking or precipitating the acute myocardial infarction by aggravating the preexisting and underlying coronary heart disease."

Wasenmiller did interview claimant, and we conclude from his letter that he obtained a more extensive history than did Lee and Kloster. However, Wasenmiller does not explain why he concluded:

"It is my impression that Mr. Somers did, in fact, suffer a significant anterior myocardial infarction on June 26th of this year. The etiology of this problem is coronary athero-sclerosis which was undoubtedly present and progressive for several months or years prior to his infarction. Contribution of the emotional stress that Mr. Somers describes for the three days prior to his myocardial infarction as a factor contributing to the acceleration of his underlying athero-sclerosis or a precipitant to his myocardial infarction is speculative. Mr. Somers' other major risk factors, i.e., hypercholesterolemia, exogenous obesity and cigarette smoking undoubtedly did contribute to the acceleration of his underlying coronary artery disease."

Because Wasenmiller failed to explain *why* contribution of the stress to the heart attack was "speculative," we likewise accord his opinion little weight.

In contrast, Hodge's testimony was both well-reasoned and based on a complete factual history. For example, the following exchanges took place at the hearing:

"Q   [claimant's attorney]: Are you familiar with an incident which caused stress in Mr. Somers' life a day or two before the heart attack?

"A   [Hodge]: I know there was * * * serious stress in the two days preceding the heart attack, oh, involving legal action taken by another attorney here in town.

"Q:   Did you know how upset he was?

"A:   I heard that he was about as angry as some long-time acquaintances had ever seen him.

"Q:   Okay. Did you know that he had some symptoms the afternoon and evening prior to the heart attack?

"A:   I don't think I elicited that history initially.

"Q: Let me ask you this question, then, Doctor.

"A: Okay.

"Q: I ask you to assume that for the purpose of this question that Mr. Somers was extremely upset for a day, two days, leading up to the heart attack, oh, with symptoms of an acute acid stomach, heartburn, starting in the afternoon the day of the evening before the heart attack, oh, until he went to bed about 11:00 or 12:00 p.m., and that he had in fact treated it with Gaviscon, that he woke up sometime between 12:00 and 1:00 a.m., why, sweating, with chest pain, and now knowing that part of the diagnosis includes atherosclerosis, do you have an opinion whether the stress incident which was related to his work on those two days was a major contributing factor to the heart attach, Doctor?

"A: Yeah. I think that it certainly was — stress, that is. We know that emotions have a profound influence on the heart, and I think that the history of that emotional upset and the degree to which he was upset is just too much to dismiss as a coincidence.

"Q: That opinion, can you relate that - tie that to a reasonable medical probability?

"A: I think it's reasonable medical probability that the stress precipitated the heart attack in a person with underlying atherosclerosis.

Q: Okay. What * * * is the effect that stress has on an individual? I mean, oh, acute stress?

"A: Well, there are several things that are very important. It causes the pulse to increase, the blood pressure to increase. It causes the heart to beat more forcefully. Actually, those are three of the major determinants of the heart's oxygen consumption. So it causes all of those things to increase, and the heart oxygen requirements to go dramatically up. Also, the coronary arteries are richly enervated by fibers of the sympathetic nervous system. And the sympathetic nervous system is what is activated when we're under stress. And we know that spasm of the coronary arteries does occur, and so in addition to increasing the myocardial oxygen requirement, why, such spasm may occur and decrease the supply.

"Q: Okay. Do you find the symptoms the evening prior to the heart attack to be * * *.

"A:   They may not have been gas. They may very well have been myocardial ischemia.[1]

"* * * * *

"Q   [SAIF's attorney]: Considering, doctor, in this case that we have an individual who at the time of the infarction is 44 years old, has a history of — a history as indicated in your medical record as a heavy smoker, has a positive family history, oh, as we have in this case, such an individual would be susceptible to having a myocardial infarction with or without any sort of stress, isn't that correct?

"A:   That's true.

"Q:   Okay. So you can't say with certainty in this particular case that the myocardial infarction suffered by Mr. Somers on the date in question, the 26th of June, was caused by any acute, chronic stress?

"A:   To say that the acute stress played no role in the events of that night, why, I think is just — that is just asking too much. I think that there is a reasonable probability that the acute stress precipitated a myocardial infarction with underlying atherosclerosis."

Reversed; order of the referee reinstated.

---

[1] Hodge's testimony as to the effects on the heart of acute stress is uncontradicted, as is his testimony that myocardial ischemia, which can precede a myocardial infarction, is often mistaken for gas or heartburn.