Argued and submitted July 18, affirmed November 12, 1986

In the Matter of the Compensation of
Dale H. Marshall, Claimant.

**MARSHALL,**
*Petitioner,*

*v.*

**BOISE CASCADE CORPORATION,**
*Respondent.*

(WCB 84-09242; CA A37914)

728 P2d 35

Robert Wollheim, Portland, argued the cause for Petitioner. With him on the brief was Welch, Bruun & Green, Portland.

Allan M. Muir, Portland, argued the cause for respondent. With him on the brief were William H. Replogle and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Warren and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant seeks review of a Workers' Compensation Board order that reverses the referee and holds that claimant failed to prove that his hearing loss was caused by his employment. We review *de novo* and affirm.

Claimant began working for Boise Cascade in 1955 and testified that he had no problems with his hearing at that time. Within two years, he was transferred to a large machine that makes toilet paper and napkins. He described the sound it makes as a "high screaming noise" and stated that it was difficult to have a conversation when close to the machine. In approximately 1963, Boise Cascade began providing earplugs, and earmuffs were made available the following year. He did not use either of them consistently, because they were uncomfortable. Boise Cascade tested his hearing for the first time in 1963, and the test indicated normal low tone hearing acuity and a high tone hearing loss. A 1971 test revealed a low tone loss and further loss in the high tones. The loss increased in all frequencies throughout the 1970's and early 1980's. In 1975, claimant began wearing a hearing aid, and Boise Cascade installed a soundproof booth, where claimant spent approximately five hours each day, but he spent three hours outside the booth checking the machine. He was diagnosed as having hypertension and acromegaly[1] the same year and received radiation treatment for the acromegaly. His pituitary gland was removed in 1976, and he remains on medication.

The referee concluded that claimant's testimony was credible, that noise on the job was the major contributing cause of the hearing loss and that, therefore, it was compensable. The Board reversed, holding that claimant had failed to carry his burden of proof. The only issue on review is whether the noise at work was the major contributing cause of his hearing loss.

Evidence from three doctors was presented, although none of them testified at the hearing. Claimant relies on the opinion of Dr. Wilson, who specializes in otology and neuro-otology and examined claimant in August, 1984. He noted that

---

[1] Acromegaly is "a condition caused by hypersecretion of the pituitary growth hormone after maturity and characterized by enlargement of the extremities of the skeleton—the nose, jaws, fingers, and toes * * *." *Dorland's Illustrated Medical Dictionary* 30 (25th ed 1974).

claimant had worked in a noisy environment for 27 years and had had a gradual hearing loss over the last 20 years. He concluded that the major portion of claimant's hearing loss was produced by noise exposure. Wilson did not think that acromegaly was a contributing factor.

Boise Cascade bases its arguments on the opinions of Dr. Bookin and Dr. Myers. Bookin, an internist and endocrinologist, treated claimant for acromegaly from 1975 to 1983 and observed that it was "far advanced" when he first examined him. He stated that, in 1975, claimant had a bony and connective tissue overgrowth, which has been documented as causing hearing losses in other cases. He concluded that acromegaly may have been the sole cause but stated that he could not rule out other factors, such as noise.

Myers is an otolaryngologist; he examined claimant in February, 1982, and July, 1984. He concluded that claimant's hearing loss was due to hypertension and vascular insufficiency in the cochlea. He based his opinion on the fact that acoustic trauma affects high frequency levels but not lower ones. Claimant suffers a hearing loss at all levels, but it is more significant at lower ranges. Therefore, the doctor concluded that the hearing loss could not have been caused by excessive noise.[2] He also ruled out the pituitary tumor, radiation treatment and surgery as causes of claimant's hearing loss.

■ We find Myers' opinion more persuasive. When medical experts disagree, we tend to place more emphasis on opinions that are well-reasoned and based on the most complete information. *Somers v. SAIF,* 77 Or App 259, 712 P2d 179 (1986). Only Myers' opinion meets those criteria. Bookin was not an ear specialist, and both other doctors disagreed with his conclusion that acromegaly caused the hearing loss. Wilson's opinion was conclusory and not thoroughly

---

[2] Myers explained in a letter to claimant:

"Your audiograms obtained in my office on February 16, 1982 and July 16, 1984 as well as the ten audiograms contained in your claim file, are all of the same configuration revealing a sensori neural hearing impairment involving all frequencies. Acoustic trauma to the cochlea impairs 3,000, 4,000, and 6,000 Hz., it does *not* impair the low frequencies. You have impairment of all frequencies with no hearing above the 60 dB level. There is no recovery at 8,000 Hz., as is found with acoustic trauma to the cochlea. Your hearing loss is consistent with a vascular impairment and is not consistent with hearing impairment produced by prolonged excessive noise exposure." (Emphasis in original.)

explained. He merely noted that claimant had been exposed to noise for some 27 years and had acromegaly, then concluded:

"Aside from the possibility of some contributing loss of hearing from a hereditary standpoint, as well as a change related to his age, in all medical probability the major portion of his hearing loss is related to noise exposure."

Although he included copies of an audiogram and hearing loss computation, he made no observation about the fact that noise affects only high frequency levels.

■     Generally, we too tend to give greater weight to the conclusions of a claimant's treating physician when the medical evidence is divided. *Weiland v. SAIF,* 64 Or App 810, 669 P2d 1163 (1983). However, claimant visited Wilson only once and Myers only twice; therefore both doctors had similar opportunities to evaluate his condition. Myers presented a comprehensive report which documents exposure to noise in jobs that claimant had before Boise Cascade, head or ear injuries during childhood, past surgeries and medications and recreational activities that may have had a high noise level. He contacted the physicians who performed the radiation therapy and surgeries to obtain their opinions on whether pituitary tumors cause hearing loss. He calculated claimant's hearing acuity based on audiograms over a 21-year period and reached this conclusion:

°"From the foregoing table it is obvious Mr. Marshall's hearing impairment has been progressive. In my opinion it is not consistent with acoustic trauma, although with his inconsistent use of ear protection, this may have contributed to his loss. Acoustic trauma does not produce impairment of the low frequencies, none of his being better than a 60 dB acuity and with a progressive impairment with no response at 8,000 Hz. It is also my opinion that Mr. Marshall's hearing impairment is not related to his pituitary tumor, his radiation therapy, or his surgery. It is my opinion that his hearing impairment with his hypertension and from his audiometric curve that his impairment is on a vascular basis."

■     Myers also observed that it is not possible to document which factors contributed a given percentage of the hearing impairment. Although noise may have contributed to claimant's loss, we conclude that the work noise was not the major contributing cause of his hearing loss.

Affirmed.